SPINCYCLE, INC.,

v.

Burcin KALENDER.

No. CIV.A. DKC2000–1190.

United States District Court,
D. Maryland.

Feb. 14, 2002.

Brett Ingerman, Paul A. Fenn, Piper, Marbury, Rudnick and Wolfe, Baltimore, MD, Arthur M. Holtzman, Pedersen and Houpt, Chicago, IL, for plaintiff.

Samuel J. DeBlasis, II, DeCaro Doran Siciliano, Gallagher and DeBlasis LLP, Lanham, MD, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this breach of contract action is Defendant's motion for summary judgment as to Counts II, III, VI, and VIII. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion for summary judgment is denied.

## I. Background

This claim arises out of the sale of four laundromats from Burcin Kalender to SpinCycle, Inc. On September 30, 1998, SpinCycle and Kalender entered into an Asset Purchase Agreement (the "Agreement") for the sale of four laundromats located at: 1) 3250 Pennsylvania Ave., S.W., Washington, D.C. ("Store 251"); 2) 5937 Central Avenue, Capital Heights, Maryland ("Store 252"); 3) 5247 Marlboro Pike, Capital Heights, Maryland ("Store 253"); and 4) 5001 Marlboro Pike, Capital Heights, Maryland ("Store 254") (collectively the "Stores"). The sale price in the Agreement was $2,750,000. SpinCycle contends that this figure was a multiple of what it believed was the combined historical cash flow of the Stores. Amended Complaint ¶ 12. Its belief as to the historical cash flow was, according to SpinCycle's corporate representative, based on revenue information provided by Kalender. Paper No. 39, p. 2 & Ex. D, pp. 61–64. Both parties agree that during sale negotiations Kalender represented to SpinCycle what he recalled to be the historical monthly revenues of each individual laundromat. Kalender represented that Store 251 generated at least $8500 a week, Store 252 at least $7000 a week, Store 253 at least $6000 a week, and Store 254 at least $9000 a week. SpinCycle requested additional proof of these revenue figures as part of its due diligence and to determine the appropriate selling price. In order to obtain additional financial data after Kalender refused to divulge his federal income tax returns, SpinCycle and Kalender agreed that SpinCycle would conduct a coin count by manually collecting and

counting the coins from the washer and dryer coin boxes for a one week period.[1] Section 4.3 of the Agreement specified that SpinCycle was not obligated to enter into the Agreement if the coin count did not demonstrate specified minimum revenues for each store. The coin count began prior to the start of business on October 1, 1998. SpinCycle employees collected the coins on October 4 and October 8, 1998, completing the one-week period. The coin count results substantially exceeded the estimated annual revenues. SpinCycle asserts that, because of the discrepancy in the figures, it wanted more time to review the Stores' operation, but Kalender refused to allow more time and threatened to terminate the agreement. SpinCycle and Kalender proceeded with the closing as scheduled.

After the closing, SpinCycle conducted a four week audit of the weekly revenues of the Stores. Kalender's representations regarding the Stores' historical revenues and the coin count revenues were both substantially higher than the actual weekly revenues generated during the four week audit. SpinCycle states that the coin count results exceeded the actual revenue at Store 251 by 50%, Store 252 by 23%, Store 253 by 36%, and Store 254 by 33%. Based on the disparity between the actual revenue and the coin count and Kalender's representations, SpinCycle alleges that Kalender misrepresented the laundromats' historical revenue and manipulated the coin count to provide the basis for an inflated selling price. SpinCycle's amended complaint against Kalender alleges 1) breach of contract; 2) breach of express warranties; 3) breach of implied warranty; 4) unjust enrichment; 5) promissory estoppel; 6) intentional misrepresentation—

money damages; 7) negligent misrepresentation—money damages; 8) fraud and constructive fraud; and 9) declaratory judgment seeking the right to set-off rent payments. Federal jurisdiction is based on diversity of citizenship, with the amount in controversy exceeding $75,000. The parties agree that Maryland law applies, as the place of harm occurred in Maryland and the sales contract was formed in Maryland.

During discovery, Kalender produced his annual income tax returns for 1997 and 1998. In 1997, Kalender claimed $1,639,692.00 as his aggregate income for the Stores in question, along with another laundromat, an ice cream parlor, and a car wash. Prior to the sale, the historical annual revenue represented by Kalender for the Stores totaled approximately $1,586,000. These figures indicate that if both Kalender's historical revenue representations and his tax return are accurate, the remaining three businesses earned less than $54,000 in 1997. In addition, the water usage pre-sale and post-sale has remained constant in all four stores.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder

---

1. SpinCycle alleges that Kalender represented prior to sale that he had tampered with the water meters, and demonstrated how he did this to SpinCycle employees, thereby making the water usage records inaccurate estimates of use and revenue. Kalender denies that he told that SpinCycle he had tampered with the meters and asserts that they are only one measure of use; others include dryer use and soap purchase.

of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the non-

moving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

#### A. Count II—Breach of Express Warranty

█ In Count II of its complaint, SpinCycle alleges that Kalender breached an express warranty that the financial statements he "previously furnished to SpinCycle" were "presented fairly and are true, correct, and complete." Paper No. 39, Ex. A, Agreement, § 5.3. Kalender agrees that § 5.3 is an express warranty, but argues that he is not in breach. He claims that SpinCycle has not presented factual evidence supporting its claim that the disclosures did not conform and asserts that because SpinCycle knew that a lot of the financial information would not be available, according to SpinCycle's Chief Financial Officer's testimony, they did not rely on the financial information he provided. Paper No. 36, Ex. 3, p. 35, 1. 21–23. Kalender points to the coin count as evidence that SpinCycle did not rely on the financial information provided by him. Therefore,

he argues, SpinCycle has no grounds to assert that he breached the warranty.

■ In order to establish a breach of express warranty in Maryland, a plaintiff is required to establish that 1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage. *Fischbach & Moore Int'l Corp. v. Crane Barge R–14*, 632 F.2d 1123, 1125 (4th Cir. 1980) (citing *Mattos, Inc. v. Hash*, 279 Md. 371, 368 A.2d 993 (1977)).

Kalender's assertion that SpinCycle did not rely upon his representations because it knew his figures were unreliable is unavailing. He cannot rely upon the fact that he was unwilling to provide supporting documentation, such as tax returns and utility records, to claim now that Plaintiff knew his financial information was unreliable and, therefore, did not rely upon it. SpinCycle's argument that it instituted the coin count as a method of verifying Kalender's financial representations, not as the only means of determining the Stores' financial performance, supports its claim for breach of warranty, as does the testimony of SpinCycle executives that they often rely upon many different sources of financial information to determine prices during sales negotiations.

Kalender overlooks the fact that the sales price was determined in § 3.1 of the Agreement prior to the coin count. Christopher Lombardi, SpinCycle's corporate representative, testified that the sale price was determined by "taking what the seller gave us as revenue and ... we would apply what our expenses were going to be so that we could determine what our [earnings] would be." Paper No. 39, Ex. D, p. 61. James Puckett, a SpinCycle employee also involved in the sales negotiations with Kalender, testified that the revenue figures Kalender represented "became the basis for what we started to formulate a purchase price should be." Paper No. 39,

Ex. E, p. 42. Because the price was determined in the Agreement prior to the coin count and SpinCycle has provided evidence to demonstrate it was based in part upon the financial information Kalender had provided, the warranty in § 5.3 applies to the financial revenue information provided by Kalender. SpinCycle has made "a sufficient showing on an essential element of [its] case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Therefore, Kalender has not established that there is no genuine question of material fact regarding the second element of an express warranty claim under *Fischbach*.

### B. Count III—Breach of Implied Warranty

SpinCycle asserts in Count III that Kalender "impliedly warranted that he would negotiate and contract in good faith." Paper No. 10, ¶ 37. Kalender argues that summary judgment should be granted in his favor as to Count III because SpinCycle has failed to establish that Kalender misrepresented the Stores' financial information and manipulated the coin count.

■ The term breach of implied warranty usually refers to the sale of commercial goods. However, "Maryland law recognizes an implied covenant of good faith and fair dealing in all negotiated contracts." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir.2000). "[A] duty of good faith and fair dealing is an implied term in certain contracts .... [It] merely obligates a [party] to exercise good faith in performing its contractual obligations." *Parker v. Columbia Bank*, 91 Md.App. 346, 604 A.2d 521, 531 (1992).

■ SpinCycle relies primarily on three facts to show this breach: (1) Kalender's revenue estimates differed substantially from the actual revenue after the closing;

(2) his income tax returns indicate that those four businesses, if his estimates are correct, comprise virtually all of his income, despite the fact that he owns three other businesses; and (3) there is a dispute regarding the representations Kalender made about the water meter. Kalender's assertions that SpinCycle "knew" that his financial information was unreliable and that it was responsible for operating the coin count do not demonstrate that SpinCycle has failed to meet the burden of providing evidence to support their claims. The conflicting accounts from both parties clearly reflect a question of material fact that is not appropriate for resolution by summary judgment.

### C. Count VI—Intentional Misrepresentation

■ Defendant asserts that Count VI alleging intentional misrepresentation is a repetition of Count VIII, alleging fraud and constructive fraud, and that summary judgment should be granted for the sake of "clarity, brevity, and conciseness." Paper No. 36, p. 17. Plaintiff responds that Maryland has recognized these two claims as separate causes of action and the elements of each action are distinct.

■ For support, Kalender looks to *Miller v. Fairchild Indus.*, 97 Md.App. 324, 629 A.2d 1293, 1304 (1993), which states that "fraud/deceit/intentional misrepresentation" is a single claim. According to Defendant, this proves that Count VI, alleging intentional misrepresentation, and Count VIII, alleging fraud and constructive fraud, are identical. However, the elements of constructive fraud are different from the elements of fraud/intentional misrepresentation. The elements of fraud/deceit/intentional misrepresentation in Maryland are:

(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defen-

dant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038, 1047 (1995) (internal citations omitted). The Court of Special Appeals recites the same five factors as the elements of fraud/deceit/intentional misrepresentation in *Miller*.

■ These factors differ, however, from the elements establishing constructive fraud in Maryland. In *Scheve v. McPherson*, 44 Md.App. 398, 408 A.2d 1071, 1076 (1979), the Court of Special Appeals held that constructive fraud:

is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

(internal citation omitted). According to *Scheve*, constructive fraud does not require a finding of dishonesty or intent to deceive, whereas fraud/intentional misrepresentation does. It is possible, therefore, to bring each claim separately because the allegations do not duplicate each other. Previous plaintiffs in Maryland have brought these claims as part of the same cause of action and the court allowed both to go forward, as the elements of each differ. *See Son v. Margolius, Mallios, Davis, Rider & Tomar*, 114 Md.App. 190, 689 A.2d 645, 660–61 (1997), *rev'd on other grounds*, 349 Md. 441, 709 A.2d 112 (1998)

(holding that fraud and constructive fraud are similar, but not identical).

### D. Count VIII—Fraud and Constructive Fraud

In Count VIII of its complaint, SpinCycle asserts that Kalender failed to disclose material facts and falsely represented the Stores' financial information in order to obtain a higher purchase price. Kalender asserts that in order for SpinCycle to prove constructive fraud, it must prove the five elements required to establish fraud/intentional misrepresentation. Paper No. 36, p. 12. This is incorrect, however, because the elements set forth in *Scheve* do not require a finding of intentional false representation, as does a finding of fraud/intentional misrepresentation. Rather the key to a finding of constructive fraud, under *Scheve*, is a "breach of a legal or equitable duty." *Scheve*, 408 A.2d at 1076. Kalender does not dispute that he had a legal duty to provide accurate information under *Scheve*.

Kalender insists that SpinCycle has failed to set forth evidence that he falsely misrepresented the Stores' financial information or that he had any intent to defraud SpinCycle. However, in order to support a claim of constructive fraud, SpinCycle does not need to establish that Kalender had "actual dishonesty of purpose [or] intent to deceive." *Son*, 689 A.2d at 661. According to *Son*, SpinCycle does need to prove the other elements of fraud however, specifically that the representation was false for the purpose of defrauding the person, justifiable reliance by the injured upon the representations, and damages. *Id. See also Alleco*, 665 A.2d at 1047.

■ Although a claim of constructive fraud does not require the plaintiff to allege that the defendant had an intent to deceive, SpinCycle has adequately alleged that Kalender intended to deceive it through Puckett's testimony regarding the water meter. According to SpinCycle, Kalender represented to it that the water meter was inaccurate because he had tampered with it in order to underrepresent to the utility company how much water his Stores were using. Puckett testified that Kalender showed him how to remove the water meter from the water main, so that it cannot read the volume coming through the pipe. Paper No. 39, Ex. E, p. 40. The utility records do not reflect a change, however, from the pre-sale time period, when Kalender claimed to tamper with the meter and post-sale, when the meter was not tampered with. The consistency of the water meter readings during the period of Kalender's asserted tampering and the actual legitimate water meter reading provides support for SpinCycle's allegation that Kalender was intending to deceive them and engaged in intentional misrepresentation and constructive fraud. In addition, Kalender asserts he never tampered with the meter, directly contradicting Puckett's testimony. There is a genuine issue of material fact regarding Kalender's representations, therefore summary judgment is not appropriate on the counts alleging fraud.

### IV. Conclusion

For the reasons stated above, Defendant Burcin Kalender's Motion for Summary Judgment as to Counts II, III, VI, and VIII is denied. A separate order will follow.