PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PAUL F. ROBINSON,
            *Plaintiff-Appellant,*

v.

AMERICAN HONDA MOTOR
COMPANY, INCORPORATED; MICHELIN
NORTH AMERICA, INCORPORATED,
            *Defendants-Appellees.*

No. 07-1668

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(8:06-cv-03400-RWT)

Argued: September 25, 2008

Decided: January 5, 2009

Before NIEMEYER and AGEE, Circuit Judges, and
Richard L. VOORHEES, United States District Judge
for the Western District of North Carolina,
sitting by designation.

Affirmed by published opinion. Judge Voorhees wrote the
opinion, in which Judge Niemeyer and Judge Agee joined.

## COUNSEL

**ARGUED:** Thomas Joseph Minton, GOLDMAN & MIN-
TON, P.C., Baltimore, Maryland, for Appellant. Roy Morse

Brisbois, LEWIS, BRISBOIS, BISGAARD & SMITH, L.L.P., Los Angeles, California; Peter W. Herzog, III, BRYAN CAVE, L.L.P., St. Louis, Missouri, for Appellees. **ON BRIEF:** Jon P. Kardassakis, LEWIS, BRISBOIS, BIS-GAARD & SMITH, L.L.P., Los Angeles, California, Robert B. Green, David B. Irwin, IRWIN, GREEN & DEXTER, L.L.P., Towson, Maryland, for Appellee American Honda Motor Company, Incorporated; Richard P. Cassetta, BRYAN CAVE, L.L.P., St. Louis, Missouri, Joel A. Dewey, Jeffrey M. Yeatman, DLA PIPER US LLP, Baltimore, Maryland, for Appellee Michelin North America, Incorporated.

---

## OPINION

VOORHEES, District Judge:

Paul F. Robinson ("Robinson") appeals a district court order dismissing pursuant to FED. R. CIV. P. 12(b)(6) his claims against American Honda Motor Co., Inc. ("Honda") and Michelin North America, Inc. ("Michelin"), alleging breach of express and implied warranties regarding the durability of the tires on his minivan and seeking a declaratory judgment in his favor. We affirm.

I.

Robinson purchased a new Honda Odyssey Touring model minivan in March 2005 from an authorized Honda dealer in Towson, Maryland. Robinson's new Honda minivan came equipped with four "PAX System" tires manufactured by Michelin. Through a purpose-built wheel-rim and tire combination, PAX System tires are designed to provide a "run-flat" capability. If a tire is punctured, the minivan can still be driven at speeds of up to 55 mph for a distance of up to 125 miles. PAX System tires are standard equipment on the Touring model of the Honda Odyssey. Because of the PAX Sys-

tem's unique wheel-rim and tire combination, no other brand or model of tire will fit on the minivan unless the wheels themselves are replaced.

Honda provided a *2005 Honda Odyssey Warranties* booklet to each purchaser of a 2005 Honda minivan. This booklet states in relevant part:

> Your vehicle is covered for 3 years or 36,000 miles, whichever comes first.
>
> *Warranty Coverage*
>
> Honda will repair or replace any part that is defective in material or workmanship under normal use. See *Proper Operation* on page 40. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Warranty expires.
>
> *This New Vehicle Warranty Does Not Cover:*
>
> • Emissions control systems, Accessories, Batteries, or Tires (They have their own warranties).
>
> • Normal wear or deterioration of any part.

J.A. 53.

A separate section in the *2005 Honda Odyssey Warranties* booklet is devoted solely to tires. It states:

> *Tires*
>
> The tires that come as original equipment on your new Honda are warranted by their manufacturer

(including the compact spare tire). A separate warranty statement for the tires is in the glove box.

*Obtaining Warranty Service*

Your Honda dealer will be glad to help in determining if a problem in your vehicle is caused by a defective tire. He can also assist you in locating a local representative of the tire's manufacturer so you can get warranty service.

J.A. 70.

That the warranty excludes tires is also made clear in the "A Quick Reference to Warranty Coverages" section at the beginning of the booklet:

*New Vehicle Limited Warranty*

Every new Honda is covered, except for tires, for 3 years or 36,000 miles. The tires are warranted separately.

J.A. 48.

Lastly, in a section entitled "Operation and Maintenance of Your Honda," the warranty booklet declares that "[b]y keeping your Honda in top condition, you will be rewarded with years of trouble-free service at the lowest operating cost. The keys to keeping your Honda in top condition are proper operation and regular maintenance." J.A. 79.

The Michelin warranty that came with Robinson's Honda minivan is entitled *PAX® SYSTEM TIRE LIMITED WARRANTY*. Under the heading "WHAT IS COVERED AND FOR HOW LONG," the document states, *inter alia*, that "Michelin PAX System tires, used in normal service . . . are covered by this warranty against defects in workmanship and

materials, for the life of the original usable tread or 6 years from the date of purchase, whichever comes first. At that time, all warranties, express or implied, expire." J.A. 122A.

A separate section delineates "WHAT IS NOT COVERED BY THE LIMITED WARRANTY OR MICHELIN PAX SYSTEM ASSURANCE PLAN." J.A. 122B. Among other things, the warranty does not apply to "tires and support rings which become unrepairable and/or unserviceable due to . . . [u]neven or rapid wear which results from mechanical irregularity in the vehicle such as wheel misalignment (a measured tread difference of 2/32 nds of an inch or more across the tread of the same tire)." J.A. 122B.

Also relevant to the present case, the warranty contains a section that describes "HOW REPLACEMENT CHARGES ARE CALCULATED." This section states:

> If a Michelin PAX System tire becomes unserviceable due to a workmanship or materials condition or a road hazard injury during the first 24 months of service or before 50% of the tread is worn, whichever occurs first, Michelin will furnish a comparable new Michelin PAX System replacement tire at NO CHARGE. . . .

> If a Michelin PAX System tire becomes unserviceable due to a workmanship or materials condition or a road hazard injury after the free replacement period, Michelin will furnish a comparable Michelin PAX System replacement tire on a pro rata basis. [A dealer] shall determine the charge by multiplying the percentage of the original usable tread worn, by the current selling price . . . .

J.A. 122B.

Robinson used the car for personal and family purposes and had the tires rotated by the Honda dealer at the recommended

maintenance intervals. After 18 months and less than 18,000 miles of use, Robinson noticed what he characterized as "excessive wear" on the tires, "particularly on the outside edge of the tread and sidewall." J.A. 10. Upon going to a local tire shop to purchase new tires, Robinson was informed that only Michelin PAX System tires would fit on his minivan's wheel-rims and that these tires could only be installed by his Honda dealer. When Robinson went to his Honda dealer, he was advised that he needed four new tires at a cost of over $1,200. The dealer stated that the tires were not warranted by Honda and offered to put Robinson in contact with Michelin. Robinson spoke with a Michelin representative who offered to pay 25% of the replacement cost of the tires. This set-off was calculated based on the amount of tread remaining on the tires.

Robinson refused this offer and shortly thereafter filed suit against Honda and Michelin in the Circuit Court for Montgomery County, Maryland in November 2006. The complaint alleged four counts, all of which were asserted against both defendants: (I) Breach of Express Warranty, (II) Breach of Implied Warranty, (III) Declaratory Judgment, and (IV) Consumer Fraud. Count III, seeking a declaratory judgment, asked the court to construe the terms of the parties' warranties. Robinson purported to act for a class of similarly situated Honda Odyssey owners whose vehicles were also equipped with the PAX System tires.[1]

Honda removed the case to the United States District Court for the District of Maryland (Southern Division) pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Both Honda and Michelin filed motions to dismiss all counts

---

[1]This class was described as "[a]ll current and former owners and lessees of Honda Odyssey minivans from the 2005 model year or later, whose minivans were sold in the United States and were equipped by Honda with Michelin PAX System, run-flat tires. The class excludes officers, directors, and employees of Defendants, and any persons who may allege personal injury as a result of defective Michelin PAX System tires." J.A. 12.

pursuant to FED. R. CIV. P. 12(b)(6) for Counts I-III and FED. R. CIV. P. 9(b) for Count IV. After briefing, the district court held a hearing on these motions on June 11, 2007. At the conclusion of the hearing, the court granted both motions to dismiss all counts, stating its reasoning in an oral opinion delivered from the bench. Counts I-III were dismissed with prejudice, while Count IV was dismissed without prejudice so that Robinson could amend his complaint and refile as to Count IV if he wished. Robinson chose not to do so, and Count IV is not before this court on appeal. On July 5, 2007, final judgment was entered in favor of Honda and Michelin on all counts. This appeal was timely filed on July 10, 2007.

II.

The standard of review for dismissal pursuant to Rule 12(b)(6) is *de novo*. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991) (citation omitted). This court will construe factual allegations in the non-moving party's favor and will treat them as true, but the court is not bound by the complaint's legal conclusions. *Id.* To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007).

Although the express warranties of Honda and Michelin were not attached to Robinson's complaint,[2] this court may consider them when reviewing the motion to dismiss because the warranties were integral to and explicitly relied on in the complaint and because Robinson agrees that the warranties provided are authentic. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). These warranties were also relied upon by the district court in rendering its decision.

---

[2]Honda's warranty was attached to Honda's motion to dismiss, and Michelin's warranty was attached to Robinson's response in opposition to the motion to dismiss.

III.

Count One

(Breach of Express Warranties)

To state a claim for breach of express warranty under Maryland law, a plaintiff must allege "1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *Spin Cycle, Inc. v. Burcin Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002) (citations omitted).

A.

The district court ruled correctly in dismissing the claims against Honda for breach of express warranty. Robinson's claim fails to allege that his minivan did not conform to the warranty. By its own terms, the warranty clearly, unambiguously, and repeatedly excludes tires from the warranty coverage. In the "A Quick Reference to Warranty Coverages" section at the beginning of the warranty booklet, under the heading "New Vehicle Limited Warranty," the text states, "Every new Honda is covered, except for tires, for 3 years or 36,000 miles. The tires are warranted separately." J.A. 48. In the subsequent, expanded description of the New Vehicle Limited Warranty, the booklet states that "This New Vehicle Limited Warranty Does Not Cover: Emissions control systems, Accessories, Batteries, or Tires. (They have their own warranties)." J.A. 53. Farther along, an entire page in the warranty booklet is devoted to "Tires." This section explains that "[t]he tires that come as original equipment on your new Honda are warranted by their manufacturer . . . . A separate warranty statement for the tires is in the glove box." J.A. 70. This section also makes clear that "a local representative of the tire's manufacturer"—not the Honda dealer—will be responsible for providing "warranty service." *Id.*

Robinson does not dispute these terms in the warranty booklet. Instead, he points to other language in the warranty booklet which declares that "[b]y keeping your Honda in top condition, you will be rewarded with years of trouble-free service at the lowest operating cost. The keys to keeping your Honda in top condition are proper operation and regular maintenance." J.A. 79. Since Robinson alleges that he had all of the recommended maintenance performed by his Honda dealer, he asserts that the need to replace the tires after 18 months and 18,000 miles breaches Honda's express promise that he would be "rewarded with years of trouble free service at the lowest operating cost."

However, even assuming that this phrase is not mere puffery, because the warranty expressly and repeatedly excludes tires from coverage, applying this provision to the tires is inconsistent with the specific terms of the warranty. In addition, "lowest operating cost" is not the same as "no operating cost," and the purpose of the warranty section at issue here is to encourage owners to take care of their minivans to minimize future maintenance expenses. The phrase "lowest operating cost" implies that there will be some operating cost, even for a minivan that is kept "in top condition." J.A. 79. Despite Robinson's alleged tire expenses, his well-maintained van most likely has the "lowest operating cost" when compared to other Honda Odyssey Touring model minivans that were not regularly serviced.

## B.

The district court also ruled correctly in dismissing the breach of express warranty claim against Michelin. There is no promise in the Michelin warranty that the tread on the tires will last for a definite period of time or endure a certain number of miles driven. Instead, the warranty covers the tires "against defects in workmanship and materials, for the life of the original usable tread or 6 years from the date of purchase, whichever comes first." J.A. 122A. This language makes clear

that the warranty will expire with the tread, and thus tread wear cannot be covered by the warranty.

This view of the warranty is reinforced by the section entitled "HOW REPLACEMENT CHARGES ARE CALCULATED." J.A. 122B. Under the warranty, if a tire "becomes unserviceable due to a workmanship or materials condition or a road hazard injury during the first 24 months of service or before 50% of the tread is worn, whichever occurs first, Michelin will furnish [a new tire] at NO CHARGE." *Id.* If more than 50% of the tread is worn but the tire is otherwise within the six year warranty period, Michelin will pay a "pro rata share" of the replacement cost based on the percentage of the tread remaining. *Id.* Both of these replacement provisions indicate that the life of the warranty is governed by the life of the tread, rather than the life of the tread being guaranteed by the warranty.

Nevertheless, Robinson argues that because the warranty expressly excludes coverage for "tires and support rings which become unrepairable and/or unserviceable due to . . . [u]neven or rapid wear which results from mechanical irregularity in the vehicle such as wheel misalignment, (a measured tread difference of 2/32 nds of an inch or more across the tread of the same tire)," the warranty must by implication cover rapid tread wear which does not result from mechanical irregularities. Otherwise, Robinson argues, this exclusion would be superfluous and therefore meaningless. In contrast, Michelin argues that interpreting this disclaimer as impliedly extending warranty coverage to other types of rapid tread wear would contradict and render superfluous the more important and more numerous portions of the warranty which limit coverage to the life of the tread.

After reviewing all of these provisions, the district court concluded that "[t]here is no tread wear guarantee whatsoever in this warranty." J.A. 226. The court held that tread wear was not a "defect in workmanship and materials" that would be

covered by the warranty but was instead a natural and expected consequence of tire ownership. J.A. 226-27. Accordingly, the court dismissed Robinson's claim. We agree.

As Michelin points out, any negative inference of tread wear coverage created by the exclusion in the warranty disappears if the exclusion is interpreted to apply primarily to "uneven" as opposed to uniformly "rapid" tread wear. This interpretation is supported by the warranty's definition of "uneven or rapid wear" in the same clause as "a measured tread difference of 2/32 nds of an inch or more across the tread of the same tire." J.A. 122B. More importantly—and regardless of the interpretation of "uneven or rapid wear"—there can be no negative inference of warranty coverage when the other provisions of the warranty unambiguously limit coverage to the life of the tread.

Robinson's efforts to manufacture a promise concerning tread wear out of a warranty provision plainly intended to limit warranty coverage are unavailing. Because there was no tread wear guarantee in the Michelin warranty, Robinson's allegations of premature tire wear fail to state a claim for breach of express warranty.[3]

## IV.

### Count Two

### (Breach of Implied Warranties)

In addition to his express warranty claims, Robinson alleges that Honda and Michelin breached the implied warranty of merchantability because their "co-dependent prod-

---

[3]Since this court agrees with the district court that the Honda and Michelin warranties do not cover tread wear, there is no need for the court to address appellees' arguments that the express warranties are unenforceable due to lack of privity and lack of notice.

ucts" failed to meet the minimum standard of durability established by other automobile tires. Br. Appellant 15. Under MD. CODE ANN., COM. LAW I § 2-314(1), a warranty of merchantability is implied in the sale of goods by a merchant who deals in goods of that kind. To be merchantable, goods must "[p]ass without objection in the trade under the contract description" and must "be fit for the ordinary purpose for which such goods are used." MD. CODE ANN., COM. LAW I § 2-314(2). Whether a good is merchantable also depends in part on usage of trade. MD. CODE ANN., COM. LAW I § 2-314(3). This definition of merchantability incorporates trade quality standards and the consumer's reasonable expectations into the concept of merchantability. *Yong Cha Hong v. Marriott Corp.*, 656 F. Supp. 445, 449 (D. Md. 1987). In the case of automobiles, the implied warranty of merchantability "not only warrants that the automobile will operate effectively, but that it will provide reasonably safe transportation." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 285-86 (Md. 2007) (citations omitted).

Robinson contends that the alleged 18,000 mile tread life of Michelin PAX System tires does not conform to the standard of merchantability present in the automobile industry.[4] Although Robinson points to tires with a tread life of thirty-five or forty thousand miles as support for his claim, this comparison is too imprecise. Many different types of tires exist, each with a different purpose, a different design, and a different duration. Passenger tires, touring tires, high performance tires, all terrain tires, and mud tires are all categories of automobile and light truck tires commonly driven on American roads. When purchasing a specialized type of tire, consumers often choose to forego the longer tread life of standard passenger tires for special features such as increased grip or han-

---

[4]Aside from the specific issue of tire durability, Robinson makes no other allegations that his minivan failed to operate effectively or to provide reasonably safe transportation for his family.

dling, a smoother ride, a lower profile, better aesthetics, or increased traction.

The same possible trade-off exists in the present case. Like performance tires that provide better handling, Michelin PAX System tires provide a benefit—increased safety—at the cost of potentially shorter tread life. As in the case of performance tires, the merchantability of Michelin PAX System tires cannot be determined by a comparison to standard passenger tires. Instead, the merchantability of Michelin PAX System tires must be determined by examining whether these tires would "pass without objection in the trade" *as run-flat tires*. When viewed in this light, Robinson's expectation that his run-flat tires would last as long as standard passenger tires is as unreasonable as expecting run-flat tires to have the same handling characteristics as performance tires.

Robinson's claim fails because he has not alleged that his Michelin PAX System tires have a shorter tread life than other run-flat tires, and this is the proper standard of comparison. To hold otherwise would require all automobile tires to last as long as the standard passenger tire and would elevate durability above all other considerations in the manufacture and design of tires. This procrustean standard would severely limit the ability of tire and automobile manufacturers to create the specialized tires that consumers may desire. The purchaser of a set of tires—and not the courts—should be given the power to decide what balance of durability, performance, special features, and safety is best suited to his needs. If Robinson desired tires with the same tread life as standard passenger tires, he could have purchased a minivan wearing standard passenger tires.

## V.

Because we affirm the dismissal of the warranty claims and agree with the district court that the warranties do not cover tread wear, we also affirm the dismissal of Robinson's claim

for relief seeking a declaratory judgment construing the warranties in his favor. Accordingly, the order of the district court dismissing all claims in this case is

*AFFIRMED*.