**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BIZZIE WALTERS; ANNIE HODGE;
ANNETTE BALDWIN; KATRENA
COOPER; BARBARA ALLEN, on
behalf of themselves and all those
similarly situated,

      *Plaintiffs-Appellants,*

      v.

TODD MCMAHEN; TOL DOZIER;
NANCY HOLLIS; ALBERTO ASYN;
RICHARD JAMISON; JIM HUNGATE;
AMPARO HERRERA; MARIA SALIZAR
GONZALEZ; JEFF BECKMAN; JERRY
LAYNE; DAVID CASTRO; ANGIE
WOOD; JULIO UNZUETA; ELANA
FERNANDEZ; JIM BOOTH; TERRY
ASHBY; JEANETTE COX; LESLIE COX;
RANDY BROWN; EFREM ANDREWS;
GILBERTO FERNANDO RIVERA;
BENNIE GRAY; CHARLIE CARPENTER;
BEL HOLDEN; ROB HEFLIN; GARY
MILLER; EMPERATRIZ PAOLA
BEATTY; SANDRA HERRERA;
GUSTAVO GUS PAEZ,

      *Defendants-Appellees,*

No. 11-1796

and

ELANA ASYN,

*Defendant,*

PERDUE FARMS INCORPORATED,

*Movant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:11-cv-00751-RDB)

Argued: May 16, 2012

Decided: July 5, 2012

Before NIEMEYER and KEENAN, Circuit Judges, and
Margaret B. SEYMOUR, Chief United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Seymour joined.

## COUNSEL

**ARGUED:** Howard W. Foster, FOSTER PC, Chicago, Illinois, for Appellants. Maurice Baskin, VENABLE, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Matthew A. Galin, FOSTER PC, Chicago, Illinois, for Appellants. Brooks R. Amiot, JACKSON LEWIS LLP, Baltimore, Maryland, Allan S. Rubin, JACKSON LEWIS LLP, Southfield, Michi-

gan, for Appellees Efrem Andrews, Terry Ashby, Alberto Asyn, Jeff Beckman, Jim Booth, Randy Brown, Charles Carpenter, Jeanette Cox, Leslie Cox, Tol Dozier, Helena Fernandez, Bennie Gray, Rob Heflin, Amparo Herrera, Bel Holden, Nancy Hollis, Jim Hungate, Richard Jamison, Jerry Layne, Todd McMahen, Naaman Garrett Miller, Gualberto Rivera, and Angie Wood; William J. Hughes, Jr., COOPER LEVENSON, Atlantic City, New Jersey, David Daneman, BISHOP, DANEMAN & REIFF, LLC, Baltimore, Maryland, for Appellees David Castro, Maria Salizar Gonzalez, Sandra Herrera, and Julio Unzueta.

## OPINION

BARBARA MILANO KEENAN, Circuit Judge:

In this case, a group of hourly-wage employees of Perdue Farms, Inc. (Perdue), a major poultry processing company, filed a civil conspiracy action under 18 U.S.C. § 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* These hourly-wage employees (the plaintiffs) alleged that certain corporate managers of Perdue, human resources staff, and plant managers conspired to hire aliens not authorized to work in the United States in an effort to reduce labor costs. The plaintiffs asserted that this illegal hiring practice has caused the depression of wages paid to all hourly-wage employees at certain Perdue facilities. The district court granted the defendants' motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), holding that the plaintiffs failed to allege a civil conspiracy claim on which relief could be granted. We affirm, and hold that the plaintiffs failed to state a cause of action for civil conspiracy because they did not allege sufficiently a violation of two RICO predicate acts.

I.

The plaintiffs are five hourly-wage employees of Perdue who are authorized to work in the United States.[1] They filed the action on behalf of themselves and similarly-situated employees, alleging that there is a conspiracy being conducted within Perdue's human resources department involving various levels of Perdue managers and human resources clerks responsible for hiring hourly-wage employees. The alleged object of this conspiracy is the receipt of increased compensation from Perdue flowing to the employee conspirators.

The plaintiffs asserted that the increased compensation received by the employee conspirators results from a hiring scheme designed to employ aliens brought into this country illegally using fraudulent means (the hiring scheme). According to the plaintiffs, the hiring scheme operates in the following fashion. At the lowest level of the conspiracy, the human resources clerks responsible for hiring hourly-wage employees (the hiring clerks) knowingly process the employment applications of unauthorized aliens who have been brought into this country illegally.[2] The hiring clerks knowingly accept false identification documents and attest to their veracity on Employment Eligibility Verification forms (I-9 forms) required by the United States Department of Homeland Security.

The plaintiffs further alleged that the managers of fourteen Perdue facilities across the United States (the facility manag-

---

[1]The named plaintiffs are Bizzie Walters, Annie Hodge, Annette Baldwin, Katrena Cooper, and Barbara Allen.

[2]The current and former hiring clerks named as defendants are Nancy Hollis, Alberto Asyn, Elana Fernandez, Amparo Herrera, Maria Salizar Gonzalez, Angie Wood, Julio Unzueta, Emperatiz "Paola" Beatty, Sandra Herrera, Leslie Cox, Gustavo "Gus" Paez, and Gilberto "Fernando" Rivera.

ers) have instructed the hiring clerks to commit these acts.[3] The facility managers, in turn, allegedly received their instructions from certain Perdue corporate managers (corporate managers).[4]

Additionally, the plaintiffs asserted that the conspirators' acts have resulted in the depression of wages of every hourly-wage employee working for Perdue. According to the plaintiffs, this wage depression is both an effect of the hiring scheme and the cause of the plaintiffs' damages. As alleged in the amended complaint, the conspirators benefit from the hiring scheme by reducing labor costs,[5] which in turn increases Perdue's profitability and results in higher compensation for the conspirators.

The plaintiffs filed this action in federal district court in Alabama in March 2010, alleging that the hiring clerks, the facility managers, and the corporate managers (collectively, the defendants) conspired to violate 18 U.S.C. § 1962(c). According to the amended complaint, this conspiracy includes the violation of two different statutes that qualify under RICO as "predicate acts" identified in 18 U.S.C. § 1961(1).

First, the plaintiffs alleged that the hiring clerks individually violated 8 U.S.C. § 1324, which provides criminal penalties for certain acts "relating to bringing in and harboring certain aliens." 18 U.S.C. § 1961(1)(F). The particular subsection at issue, 8 U.S.C. § 1324(a)(3), establishes as a criminal

---

[3]The current and former facility managers named as defendants are Todd McMahen, Tol Dozier, Richard Jamison, Jim Hungate, Jeff Beckman, Jerry Layne, David Castro, Jim Booth, Terry Ashby, Jeanette Cox, Randy Brown, Efrem Andrews, Charlie Carpenter, Bennie Gray, and Bel Holden.

[4]The corporate managers named as defendants are Rob Helfin, the Senior Vice President of Human Resources for Perdue, and Gary Miller, the regional human resource manager for the "Delmarva" region.

[5]The authorized employees allege that "illegal immigrants will work for extremely low wages."

offense the act of knowingly hiring, during a 12-month period, ten or more unauthorized aliens who have been brought into the United States (the illegal hiring predicate). The plaintiffs asserted that each of the hiring clerks "have personally hired hundreds of [such] workers (and more than ten per year, each) with actual knowledge that the workers were unauthorized for employment" and "had been brought into the country" illegally.

Second, the amended complaint alleged that the hiring clerks individually violated 18 U.S.C. § 1546, which establishes as a criminal offense certain acts "relating to fraud and misuse of visas, permits, and other documents." 18 U.S.C. § 1961(1)(B). In particular, the plaintiffs asserted that the hiring clerks violated 18 U.S.C. § 1546(b)(1)-(3), which prohibits the use of false identification documents, and fraudulent attestations regarding the validity of such documents, in the completion of government forms (the false attestation predicate). According to the plaintiffs, the hiring clerks routinely accept false identification documents provided by unauthorized aliens and, knowing those documents to be false, attest to their validity on the I-9 forms.

After the plaintiffs filed their complaint, the defendants moved to transfer the case to Maryland, where Perdue's corporate headquarters are located. The defendants also filed a motion to dismiss the complaint under Rule 12(b)(6). The district court in Alabama granted the defendants' motion to transfer.

Once the case was transferred to Maryland, the defendants renewed their motion to dismiss. The district court granted the motion, and dismissed the action with prejudice. The plaintiffs filed a timely appeal from the district court's judgment.

## II.

## A.

We review de novo a district court's dismissal of an action under Rule 12(b)(6). *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). In examining the sufficiency of a complaint, we are guided by the Supreme Court's instructions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As this Court has noted, those decisions require that complaints in civil actions be alleged with greater specificity than previously was required. *Robertson v. Sea Pines Real Estate Cos.*, ___ F.3d ___, ___, 2012 U.S. App. LEXIS 9694, at *19 (4th Cir. 2012).

The Supreme Court's decision in *Twombly* incorporated "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, although a court must accept as true all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein. *Id.* The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6). *Id.*

Second, to survive such a motion, a complaint must state a "plausible claim for relief." *Id.* The determination whether a complaint adequately states a plausible claim is a "context-specific task," *id.* at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

To satisfy this standard, a plaintiff need not "forecast" evidence sufficient to prove the elements of the claim. *Robertson*, ___ F.3d at ___, 2012 U.S. App. LEXIS 9694, at *28. However, the complaint must allege sufficient facts to establish those elements. *Id.* Thus, while a plaintiff does not need

to demonstrate in a complaint that the right to relief is "proba-
ble," the complaint must advance the plaintiff's claim "across
the line from conceivable to plausible." *Twombly*, 550 U.S. at
570.

B.

The district court concluded that the plaintiffs' amended
complaint contained several deficiencies that were fatal to the
continued prosecution of their action. The court first deter-
mined that the amended complaint failed to plead with suffi-
cient particularity the existence of a conspiracy among the
defendants. The court also held that the amended complaint
lacked sufficient facts supporting either alleged RICO predi-
cate act. Finally, the court concluded that the entire theory on
which the amended complaint was based was barred by the
intracorporate immunity doctrine. Because we conclude that
the plaintiffs failed to plead sufficient facts to establish the
elements of either RICO predicate act, we affirm the district
court's judgment on that limited basis.

In examining the plaintiffs' allegations concerning the two
RICO predicate acts, we first observe that the plaintiffs have
alleged that the defendants violated 18 U.S.C. § 1962(d) by
conspiring to violate 18 U.S.C. § 1962(c). Subsection (d) pro-
vides, in relevant part, that "[i]t shall be unlawful for any per-
son to conspire to violate any of the provisions of subsection
(a), (b), or (c) of this section." Subsection (c) provides, in
material part:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign com-
> merce, to conduct or participate, directly or indi-
> rectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c).

An act of racketeering under RICO commonly is referred to as a "predicate act." *Maiz v. Virani*, 253 F.3d 641, 671 (11th Cir. 2001). A "pattern" of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). While private litigants may recover for racketeering injuries under 18 U.S.C. § 1964(c), their injuries must "flow from the commission of the predicate acts." 473 U.S. at 497. And, in the present case, because the plaintiffs allege only two predicate acts in support of their civil conspiracy claim, their failure to plead sufficient facts to establish the elements of either predicate act would require that the amended complaint be dismissed. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011).

1.

We turn to consider the first predicate act alleged by the plaintiffs, namely, the knowing act of hiring multiple unauthorized aliens brought into this country illegally. The plaintiffs allege that each of the hiring clerks personally violated the illegal hiring predicate, which provides in relevant part:

(A) Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under title 18, United States Code, or imprisoned for not more than 5 years, or both.

(B) An alien described in this subparagraph is an alien who—

(i) is an unauthorized alien (as defined in section [1324a(h)(3) of this title]), and

(ii) has been brought into the United States in violation of this subsection.

8 U.S.C. § 1324(a)(3).

This particular predicate act has been analyzed in similar contexts by two of our sister circuits. *See Edwards v. Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010); *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374 (2d Cir. 2001). As our sister circuits have explained, the illegal hiring predicate has two distinct mens rea elements, both of which must be present in order for a violation to occur. First, a defendant must hire ten or more aliens within a 12-month period with actual knowledge that those aliens are not authorized to work in the United States. *Edwards*, 602 F.3d at 1292-93. Second, the defendant must have actual knowledge that the unauthorized aliens hired were brought into the country in violation of 8 U.S.C. § 1324(a). *Id.* at 1293; *Commercial Cleaning Servs.*, 271 F.3d at 387.

This second element is a crucial component of any violation of the illegal hiring predicate. It is this element, requiring actual knowledge that the aliens were "brought into" this country illegally, that distinguishes 8 U.S.C. § 1324(a)(3), which contains the element and qualifies as a RICO predicate act, from 8 U.S.C. § 1324a(a)(1), which does not contain the element and is not a RICO predicate act but otherwise is substantially similar.[6] *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 534-35 (S.D.N.Y. 2009) (comparing the two provisions). Under 8 U.S.C. § 1324(a)(3), the RICO predicate act, the hiring of ten or more unauthorized aliens with knowledge that they were brought into this country illegally, exposes the employer to the imposition of fines or to a term of imprisonment of up to five years, or both. *Edwards*, 602 F.3d at 1293.

---

[6]Section 1324a(a)(1) provides, in relevant part:

In general. It is unlawful for a person or other entity—

(A) to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3) of this section) with respect to such employment . . . .

In contrast, under 8 U.S.C. § 1324a(a)(1), the act of hiring unauthorized aliens *without* knowledge that they were brought into this country illegally limits the employer's exposure to the imposition of civil penalties.[7] *Id.*

The district court determined that the plaintiffs' allegations with respect to the illegal hiring predicate were deficient in two respects. The district court stated that the plaintiffs: 1) failed to identify any employee actually known to be an unauthorized alien; and 2) made only conclusory allegations regarding the manner in which the unauthorized aliens were brought into the United States. Although we disagree with the district court's determination that a plaintiff must identify a particular unauthorized alien worker to satisfy the pleading standards established in *Twombly* and *Iqbal*, we nevertheless agree with the court's ultimate holding that the plaintiffs failed to allege sufficient facts to state a plausible claim that the defendants violated the illegal hiring predicate.

Initially, as the plaintiffs observe, the purported name of an unauthorized alien hired by Perdue likely would emerge only in the form of a pseudonym used by the alien on the I-9 form. The inclusion of such a pseudonym in the complaint would be of minimal value with respect to increasing the plausibility of the plaintiffs' claim. Moreover, the mission of the alleged conspiracy is the defendants' procurement of the unauthorized aliens brought into the country and hiring them to work for Perdue. Thus, because the individual aliens are not alleged to be conspirators but are merely subjects of the hiring scheme, they need not be described with the same detail as the conspirators, at least some of whom must be identified with a degree of particularity. *See Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1562 (1st Cir. 1994) (noting that each defendant must agree with one or more co-conspirators).

---

[7]While a pattern of violations of 8 U.S.C. § 1324a(a)(1) could expose an employer to a criminal sentence of up to six months' imprisonment, even repeated violations of that statute would not qualify as a RICO predicate act. *Edwards*, 602 F.3d at 1293.

Instead, the fatal deficiency of the illegal hiring predicate allegations is the failure to provide sufficient factual support concerning the unauthorized aliens' entry into the United States. As stated above, the illegal hiring predicate requires that the violator employ at least ten aliens within a 12-month period "with actual knowledge" that each employee is "an unauthorized alien" and that each "has been brought into the United States." 8 U.S.C. § 1324(a)(3).

The amended complaint contains only two allegations that bear on the transportation of aliens into the United States. Paragraph 54 of the amended complaint provides, in relevant part, that "since 2006, [the hiring clerk defendants] have personally hired hundreds of workers (and more than 10 per year, each) with actual knowledge that the workers . . . had been brought into the country with the assistance of others on their illicit journey across the U.S.-Mexico border . . . ." Also, paragraph 108 provides, in relevant part, that "on information and belief, Defendant Paez [a hiring clerk] is also responsible for directly working with 'coyotes' and 'runners' to obtain employment at Perdue for the illegal immigrants when they arrive in the local community. For these services, Paez charges the local immigrants a fee."

These paragraphs fail to establish the elements of a violation of the illegal hiring predicate. Paragraph 54 merely recasts the language of 8 U.S.C. § 1324(a)(3), and provides no factual basis to support the statement that hiring clerks had "actual knowledge" that the unauthorized aliens "had been brought into the country with the assistance of others."

Likewise, paragraph 108, which alleges that a single hiring clerk at one facility, on occasion, has worked with "coyotes" and "runners" to obtain unauthorized aliens for employment at Perdue, does not render plausible the contention that this clerk knowingly hired ten or more unauthorized aliens within one year knowing that they each received assistance crossing the border between the United States and Mexico. Moreover,

this allegation in paragraph 108 does not support a conclusion that a widespread conspiracy is being conducted to hire unauthorized aliens at fourteen Perdue facilities.[8] Thus, the plaintiffs' allegations regarding the illegal hiring predicate fail to advance their claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

We note that, prior to *Twombly* and *Iqbal*, the Ninth Circuit made a contrary holding with respect to similar language in a complaint involving the illegal hiring predicate. In *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002), the court held that an allegation the defendant company knew that unauthorized aliens hired were smuggled into the United States sufficiently supported the illegal hiring predicate for purposes of surviving a motion under Rule 12(b)(6). *Id.* at 1168. However, at the time *Mendoza* was decided, the dismissal of a complaint was appropriate only if it was "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Mendoza*, 301 F.3d at 1167 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). As the decisions in *Twombly* and *Iqbal* have made clear, the standard employed in *Mendoza* no longer is applicable.

Additionally, we disagree with the plaintiffs' contention that the use of "judicial experience and common sense," as authorized by *Iqbal*, 556 U.S. at 679, would lead to a conclusion that the aliens were "brought into the United States," within the meaning of 8 U.S.C. § 1324(a)(3)(B)(ii), because it is not plausible that they crossed over the border from Mexico and walked to Maryland or to any other Perdue location on their own. The plaintiffs conflate the rendering of any assistance to aliens during their course of travel with the act

---

[8]The plaintiffs also refer us to their allegations involving illegal aliens obtaining false identification documents at facilities in the United States. However, these allegations have no bearing on the issue whether and in what manner the illegal aliens were "brought into the United States."

of bringing unauthorized alien workers into the United States. However, because the illegal hiring predicate requires that unauthorized alien workers be "brought into the United States," a violation requires that a party other than the aliens actively assist with the alien workers' entry into the United States. Once these alien workers have arrived in the United States, any assistance that they receive from other parties is immaterial to the illegal hiring predicate. Therefore, while "judicial experience and common sense" may suggest that unauthorized aliens arriving in Maryland or other states did not travel there entirely by foot, it is not so obvious that such aliens allegedly employed at Perdue's facilities necessarily were "brought into the United States" by others. Accordingly, we conclude that the plaintiffs have not alleged sufficiently a violation of the illegal hiring predicate.

2.

The second RICO predicate act identified in the plaintiffs' amended complaint involves the fraudulent use and false attestation of documents. The particular provision that the plaintiffs assert was violated by the hiring clerks, 18 U.S.C. § 1546(b), states:

> Whoever uses—
>
> (1) an identification document, knowing (or having reason to know) that the document was not issued lawfully for the use of the possessor,
>
> (2) an identification document knowing (or having reason to know) that the document is false, or
>
> (3) a false attestation,
>
> for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act,

shall be fined under this title, imprisoned not more
than 5 years, or both.

18 U.S.C. § 1546(b).

The district court concluded that the allegations concerning
the false attestation predicate were insufficient for two rea-
sons. First, the district court focused on the plaintiffs' failure
to identify any single unauthorized employee. Second, the dis-
trict court held that the plaintiffs failed to state sufficient facts
to support their claims regarding this predicate act.

For the reasons we already have stated, we conclude that
the plaintiffs' failure to identify any of the unauthorized aliens
involved is not fatal to their amended complaint. Additionally,
we observe that the plaintiffs have provided a significantly
greater level of detail regarding the false attestation predicate
than they did regarding the illegal hiring predicate.[9] However,
because the plaintiffs have not alleged facts establishing that
they suffered an injury proximately caused by the hiring
clerks' violation of the false attestation predicate, their claim
also fails with regard to this predicate act.

As the Supreme Court noted in *Beck v. Prupis*, we are
guided by the "well-established common law of civil conspir-
acy" when determining whether a plaintiff has been "injured"
for purposes of 18 U.S.C. § 1962(c), based on a conspiracy
alleged under 18 U.S.C. § 1962(d). *Beck*, 529 U.S. 494, 500
(2000). While a "mere violation" of 18 U.S.C. § 1962(d) is all
that is required to establish criminal liability, a plaintiff may
recover in an action for civil conspiracy only upon establish-

---

[9]The parties dispute whether Rule 8 or Rule 9 of the Federal Rules of
Civil Procedure provides the appropriate standard for pleading a violation
of the false attestation predicate. Because we conclude that this RICO
predicate act does not qualify as the proximate cause of the plaintiffs' inju-
ries, we need not address the issue which Rule establishes the appropriate
pleading standard.

ing injury caused by an act that is itself tortious. *Id.* at 501-02 & 501 n.6. Thus, in the present case, the plaintiffs were required to allege facts establishing that a violation of the false attestation predicate proximately caused the plaintiffs' injury. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) for proposition that plaintiff in action invoking 18 U.S.C. § 1962(c) must sufficiently allege that the RICO violation was the proximate cause of plaintiff's injury).

The "central question" therefore is whether the plaintiffs' injuries were the direct result of the alleged predicate act. *Id.* at 461. The Supreme Court has identified three reasons supporting this requirement of a direct link between an alleged predicate act and a plaintiff's injury. These reasons are: (1) the factual difficulty of measuring indirect damages and distinguishing among distinct independent causal factors; (2) the complexity of apportioning damages among plaintiffs to remove the risk of multiple recoveries; and (3) the vindication of the law through compensation of directly-injured victims. *See Holmes*, 503 U.S. at 269-70 (1992). Applying the proximate causation standard used in *Anza* and *Holmes*, we conclude that the hiring clerks' acts did not cause the injury alleged by the plaintiffs. The injury alleged in the amended complaint is the depression of wages suffered by the plaintiffs as the result of Perdue's employment of unauthorized aliens. Notably, however, the wage depression alleged by the plaintiffs is not directly linked to any violation of the false attestation predicate.

The first rationale identified in *Holmes* supporting the requirement of proximate causation illustrates the central deficiency of the plaintiffs' claim. Here, the factual challenges involved in attempting to measure indirect damages and to distinguish among distinct independent causal factors would be insurmountable.

The compensable injury resulting from a violation of 18 U.S.C. § 1962(c) necessarily is the harm caused by the predi-

cate acts, which must be related sufficiently to each other that they constitute a pattern. *Anza*, 547 U.S. at 457. Thus, the RICO predicate acts must not only be a 'but for' cause of a plaintiff's injury, but the proximate cause of that injury as well. *Hemi Group, LLC v. City of New York*, ___ U.S. ___, ___, 130 S. Ct. 983, 989 (2010).

In the present case, however, it is not the violation of the false attestation predicate that has caused the harm suffered by the plaintiffs. Rather, the fraudulent use of identification documents and the false attestations placed on the I-9 forms are fundamentally crimes against the government of the United States, and such actions do not directly impact the plaintiffs' wage levels. Although false attestations made by the hiring clerks are one step in a chain of events that ultimately may have resulted in the employment of unauthorized aliens by Perdue, the plaintiffs have not demonstrated that the false attestations themselves have had a direct negative impact on the plaintiffs' wages, or on any other aspect of their compensation.

This deficiency in the plaintiffs' claim becomes obvious by removing the false attestation acts from the plaintiffs' narrative. If Perdue engaged in the hiring of unauthorized aliens without the hiring clerks' fraudulent completion of the I-9 forms, such as by paying the unauthorized employees in cash and not reporting their employment to the United States government, the alleged injury suffered by the plaintiffs would be the same as that stated in the amended complaint. Therefore, as this exercise plainly illustrates, the false attestation violation cannot be a proximate cause of the plaintiffs' injury, because there is no direct relationship between the injury asserted and the predicate act alleged.[10] *Hemi Group*, ___ U.S.

---

[10]We disagree with the plaintiffs' additional argument that, even if the amended complaint fails to state a claim for conspiracy under 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), the amended complaint should be construed as alleging claims against each defendant for individual vio-

at ___, 130 S. Ct. at 989. For this reason, we hold that the plaintiffs' allegations regarding the false attestation predicate are legally insufficient.

## III.

In conclusion, we hold that the plaintiffs have not alleged a plausible violation of either RICO predicate act. Thus, as a matter of law, the plaintiffs have failed to establish a claim supporting their allegation under 18 U.S.C. § 1962(d) of a conspiracy to violate 18 U.S.C. § 1962(c). Accordingly, we affirm the district court's judgment dismissing the plaintiffs' complaint.[11]

*AFFIRMED*

---

lations of 18 U.S.C. § 1962(c). There are two distinct problems with such an argument. First, the plaintiffs have alleged a single conspiracy count, and they have not cited any authority to suggest that we can rewrite their complaint at this stage. Moreover, we decline to do so. Second, as described in detail above, the plaintiffs have failed to plead sufficient violations of either RICO predicate under 18 U.S.C. § 1962(c), rendering their request moot.

[11]Because we conclude that the plaintiffs have failed to plead adequately a cause of action under 18 U.S.C. § 1962(d), we need not address the separate issue whether the intracorporate immunity doctrine bars their cause of action.