**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLOTTE M. MCCAULEY,

       *Plaintiff-Appellant,*

       v.

HOME LOAN INVESTMENT BANK,
F.S.B.; DEUTSCHE BANK NATIONAL
TRUST COMPANY,

       *Defendants-Appellees.*

No. 12-1181

NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES; NATIONAL
CONSUMER LAW CENTER; PUBLIC
CITIZEN,

       *Amici Supporting Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
John Preston Bailey, Chief District Judge.
(2:11-cv-00087-JPB)

Argued: January 31, 2013

Decided: March 25, 2013

Before DUNCAN, WYNN, and FLOYD, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Duncan wrote the opinion, in which Judge Wynn and Judge Floyd joined.

**COUNSEL**

**ARGUED:** Bren Joseph Pomponio, MOUNTAIN STATE JUSTICE, Charleston, West Virginia, for Appellant. R. Terrance Rodgers, KAY CASTO & CHANEY PLLC, Charleston, West Virginia, for Appellees. **ON BRIEF:** Daniel F. Hedges, MOUNTAIN STATE JUSTICE, Charleston, West Virginia, for Appellant. John W. Barrett, Patricia M. Kipnis, BAILEY & GLASSER LLP, Charleston, West Virginia, for Amici Supporting Appellant.

---

**OPINION**

DUNCAN, Circuit Judge:

This appeal arises from the district court's dismissal of Charlotte McCauley's complaint against Home Loan Investment Bank, F.S.B. ("Home Loan") and Deutsche Bank National Trust Company ("Deutsche Bank"), alleging state law claims based on a mortgage contract. The district court determined that McCauley's claims were preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, and its implementing regulation, 12 C.F.R. § 560.2. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

A.

McCauley purchased her West Virginia home in 2001 on a land installment contract. In the late summer or fall of 2006, she contacted Ocean Bank, F.S.B. ("Ocean Bank") to obtain financing to pay off her land contract. Ocean Bank sent an appraiser to McCauley's home. According to McCauley, the appraisal falsely represented that the home had a market value

of $51,000 or more, when it was actually worth only approximately $35,700. Ocean Bank offered McCauley a loan of $51,000. McCauley alleges that the closing was rushed, and that she received insufficient explanation of the loan documents. Although her initial interest rate was 9.49 percent, the loan was an "exploding" adjustable rate mortgage ("ARM"). As such, the interest rate could adjust up to 15.49 percent, but could not adjust below the initial rate. McCauley struggled with her loan payments and ultimately declared bankruptcy in 2010.

## B.

McCauley filed a complaint against Home Loan, the successor in interest to Ocean Bank, and Deutsche Bank, the current holder of the loan, in West Virginia state court alleging two claims under state law: unconscionability ("Count I") and fraud ("Count II"). Count I alleged that the mortgage contract was unconscionable because the closing was hurried and conducted with inadequate explanation, the loan was induced by an inflated appraisal, and the loan's terms were substantively unfair. Count II alleged that Ocean Bank misrepresented the market value of McCauley's property for the purpose of inducing her into the mortgage contract, that McCauley reasonably relied on that representation, and that she was harmed by it.

Home Loan and Deutsche Bank removed the case to district court on diversity grounds and moved to dismiss the complaint. The district court dismissed each of McCauley's claims on the grounds that they were preempted by HOLA and its implementing regulation, 12 C.F.R. § 560.2. This appeal followed.

## II.

On appeal, McCauley argues that neither her unconsciona-

bility claim nor her fraud claim are preempted by federal law.[1] In the alternative, she contends that HOLA's implementing regulation does not apply to her case, because it was vacated by the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 11–203, 124 Stat. 1376 (2010) (the "Dodd-Frank Act"). Home Loan and Deutsche Bank contend that the district court's preemption decisions were correct, or alternatively, that McCauley failed to state a claim upon which relief could be granted.

We review the district court's grant of a motion to dismiss de novo, focusing only on the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). We "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A.

The primary question presented by this appeal is whether HOLA and its implementing regulation preempt McCauley's claims. A discussion of HOLA's preemption framework will aid our consideration of that issue.

Congress enacted HOLA during the depths of the Great Depression with the purpose of "restor[ing] public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices.'" *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161 (1982)). HOLA

---

[1]She also argues that the district court erred in dismissing her fraud claim because the banks did not move for dismissal of that claim on preemption grounds and the argument that it was preempted was not raised below until Deutsche Bank's reply brief. Because we determine that her fraud claim is not preempted, we need not reach this argument.

granted the Office of Thrift Supervision ("OTS") the authority to regulate savings banks.[2] While HOLA itself does not delineate its preemptive effect, the implementing regulation promulgated by OTS is clear: it explains that the agency "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a).

Ordinarily, there is a presumption against preemption over state police powers. This presumption does not, however, apply in areas that have a history of significant federal presence, such as national banking. *United States v. Locke*, 529 U.S. 89, 108 (2000). Of further import here is that a federal regulation has the same preemptive effect as a federal statute. *de la Cuesta*, 458 U.S. at 153. Moreover, OTS itself instructs that "[a]ny doubt should be resolved in favor of preemption," Lending & Investment, 61 Fed. Reg. 50951-01, 50966-67 (Sept. 30, 1996), and we are to defer to the agency's interpretation of its own regulation, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997).

HOLA's implementing regulation provides that "federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities . . . ." 12 C.F.R. § 560.2(a). Paragraph (b) of the regulation specifies, "without limitation," the aspects of loans that states are preempted from regulating by paragraph (a):

---

[2]The Dodd-Frank Act abolished OTS and vacated its regulations. 12 U.S.C. §§ 5412, 5413. It did not, however, do so retroactively. The Office of the Comptroller of the Currency has issued a superseding regulation governing preemption, *see* 12 C.F.R. § 150.136, but that new regulation does not govern this case. Regulations, like statutes, cannot be applied retroactively absent express direction from Congress. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Congress did not direct such retroactive application in the Dodd-Frank Act. Because 12 C.F.R. § 560.2 was in effect when the loan contract was entered into, it governs here.

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

. . .

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants; [and]

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

*Id.* at § 560.2(b). Finally, under paragraph (c) of the implementing regulation, certain state laws—including contract and tort law—are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." *Id.* at § 560.2(c).

OTS has outlined the steps a court should take in determining whether preemption applies:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is pre-

> empted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Lending & Investment, 61 Fed. Reg. at 50966-67. When interpreting HOLA and its implementing regulation, however, we are cautioned that they are not intended to "preempt state laws that establish the basic norms that undergird commercial transactions." OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996).

In light of these parameters, we turn to a consideration of McCauley's claims. We first address the question of whether her unconscionability claim is preempted and then turn to her fraud claim.

1.

As we have noted, in Count I of her complaint, McCauley contends the mortgage contract was unconscionable. She alleges that it was "closed in a hurried manner, without adequate explanation" and "induced by an inflated appraisal." J.A. 100-01. She further alleges that the loan was substantively unfair, because, among other problems, she was unaware that it exceeded the market value of her home. *Id.* at 101.[3]

---

[3]Appellees contend, were we to find McCauley's argument not preempted, she nevertheless fails to state a claim. Finding preemption, however, we need go no further.

The district court analyzed each aspect of the alleged unconscionability—the hurried closing, the inducement by inflated appraisal, the disparity between the size of the loan and the value of the home, and the "exploding" ARM—separately, ultimately finding that each was of the nature of the laws covered by § 560.2(b). McCauley contends that this approach was improper. A finding of unconscionability often depends on the circumstances at the time of the contract, *see Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986), and McCauley asserts those circumstances cannot be viewed in isolation. She concedes that none of the acts alleged in her complaint are per se unconscionable. Rather, she contends that viewed in combination, they demonstrate that she was unconscionably induced into an unfair contract. McCauley argues that had the district court viewed her unconscionability claim as a whole rather than assessing each of her allegations individually, it would not have determined that the claim fell under § 560.2(b) and thus would not have been constrained to find the claim preempted.

In considering § 560.2(b), however, we must look to all "the acts alleged in the complaint." *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 648 (7th Cir. 2007). Despite McCauley's assertion to the contrary, the framework supplied by HOLA's implementing regulation requires an examination of each component of her claim to determine if it purports to regulate those aspects of loans enumerated in § 560.2(b). After considering McCauley's allegations individually, we are constrained to conclude that the acts she challenges all fall into § 560.2(b)'s list of activities that states are preempted from regulating.

A close examination of each activity McCauley challenges bears this out:

> First, the allegedly hurried closing falls squarely within Ocean Bank's "[p]rocessing, origination, ser-

vicing, sale or purchase of, or investment or partici-
pation in, mortgages." 12 C.F.R. § 560.2(b)(10). As
such, HOLA's implementing regulation preempts
any state law claim based on the allegedly improper
closing.

Second, the allegation that the loan was induced
by an inflated appraisal falls within the regulation's
coverage of both the bank's "[d]isclosures and
advertising," *id.* at § 560.2(b)(9), and its
"[p]rocessing, origination, servicing, sale or pur-
chase of, or investment or participation in, mort-
gages," *id.* at § 560.2(b)(10).[4]

Third, the allegation that the loan is unconsciona-
ble because it exceeds the value of McCauley's
home is an attempt to regulate "loan-to-value ratios,"
*id.* at 560.2(b)(3), as well as "terms of credit," *id.* at
§ 560.2(b)(4), which are specifically covered by
HOLA's implementing regulation.

Fourth, and finally, to the extent Appellant argues
that the "exploding" ARM was substantively uncon-
scionable, such a claim is preempted because it
attempts to regulate a bank's "terms of credit, includ-
ing . . . adjustments to the interest rate . . . ." *Id.* at
§ 560.2(b)(4).

---

[4]It should be noted that although the second count of McCauley's com-
plaint alleges affirmative misrepresentation with respect to this inflated
appraisal, her unconscionability claim contains no underlying mens rea
component. Rather, it focuses on the manner in which the closing was
conducted and the fact that her loan was too high. While her two claims
arise from the same set of facts, they are distinct grievances: affirmative
misrepresentation is the most basic element of the tort of fraud, but it is
not an element of the contract claim of unconscionability. *See Grayiel v.
Appalachian Energy Partners 2001-D, LLP*, 736 S.E.2d 91, 100-04 (W.
Va. 2012).

In her unconscionability claim, McCauley in essence asks us to impose new, substantive requirements on mortgage lenders. These requirements would go beyond those state laws establishing a basic framework for commerce, such as laws prohibiting deceptive practices. Although such proscriptions "may be desirable from a public policy perspective, the discussion stops here, as HOLA precludes such an examination in this case." *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 63 (D.D.C. 2012). Having determined that McCauley's allegations supporting her first count fall under § 560.2(b), we must conclude that her unconscionability claim is preempted and dismissal of Count I was appropriate.

2.

Count II alleges that Ocean Bank fraudulently used an inflated appraisal to induce McCauley to enter into the $51,000 mortgage contract. McCauley alleges that the appraisal indicated that the market value of her property was $51,000 or more, when it was actually $35,700; that Ocean Bank intentionally employed an appraiser to misrepresent the value of the property for the purpose of inducing her to enter into the contract; that use of the inflated appraisal was intentional and material; that she reasonably relied on the appraisal; and that she has been harmed by the inflated appraisal.

McCauley argues that HOLA does not prevent states from requiring banks to deal honestly with their customers, and that intentional misrepresentation does not fall under § 560.2(b). For their part, Appellees make much the same argument regarding this second count as they do regarding the first—that the acts alleged in Count II fall under various components of § 560.2(b). In particular, they contend that the alleged fraud based on an inflated appraisal amounts to a complaint about a failure to disclose the ratio of the loan amount to the value of McCauley's collateral, which would fall under §§ 560.2(b)(3) ("[l]oan-to-value ratios"), (9)

("[d]isclosures and advertising") and (10) ("[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages").

Appellees mischaracterize the nature of McCauley's fraud claim, however. In alleging fraud, she complains not of the loan-to-value ratio per se, but of being misled regarding a component of that ratio. Similarly, the alleged intentionally inflated appraisal amounts to more than a simple failure to disclose or an irregularity in the origination of a mortgage. Rather, McCauley's complaint alleges an affirmative deception by the issuer of her mortgage, an act outside the scope of § 560.2(b). *See* OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996) ("State laws prohibiting deceptive acts and practices in the course of commerce are not included in the illustrative list of preempted laws in § 560.2(b).").

Having concluded that Appellant's fraud claim does not fall under § 560.2(b), we continue our analysis by determining whether it affects lending, and if so, whether it fits within § 560.2(c). *See* Lending & Investment, 61 Fed. Reg. at 50966-67. The fraud claim relates to the standards to which a lender dealing with a potential borrower will be held. As such, it clearly affects lending, giving rise to a presumption that it is preempted. *Id.* However, this presumption can be overcome if we determine that the fraud claim fits within the narrow confines of the types of laws enumerated in § 560.2(c) and only incidentally affects lending operations.

OTS "does not intend to preempt state laws that establish the basic norms that undergird commercial transactions," and "[a]ccordingly, in § 560.2(c), the OTS has identified certain categories of state law that are not preempted." OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996). Tort law is one of these categories. *See* 12 C.F.R. § 560.2(c); *see also* Lending & Investment, 61 Fed. Reg. at 50966 ("OTS

wants to make clear that it does not intend to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes."). Determining that the tort of fraud falls within the scope of § 560.2 would preclude fundamental state regulation of deceptive practices in which unscrupulous savings and loan associations might engage. Such an interpretation would contravene the intent of OTS, whose "assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." *Ocwen*, 491 F.3d at 643.

Moreover, allowing for fraud actions in the vein of McCauley's "would not change the regulatory landscape; rather, it would merely provide a means of redress for an alleged misdeed in this particular case." *Brown*, 829 F. Supp. 2d at 61. As OTS concluded regarding a state deceptive practices statute,

> [w]hile [it] may affect lending relationships, the impact on lending appears to be only incidental to [its] primary purpose . . . . There is no indication that the law is aimed at any state objective in conflict with the safe and sound regulation of federal savings associations, the best practices of thrift institutions in the United States, or any other federal objective identified in § 560.2(a). In fact, because federal thrifts are presumed to interact with their borrowers in a truthful manner[, the] general prohibition on deception should have no measurable impact on their lending operations.

OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *6 (Dec. 24, 1996).

We thus conclude that because McCauley's state tort claim for fraud only incidentally affects lending, it is not preempted

by HOLA or its implementing regulation. Dismissal of Count II on preemption grounds was therefore unwarranted.

## B.

As they did with respect to McCauley's contract claim under Count I, Appellees argue that even if we conclude that McCauley's tort claim was not preempted, it should have been dismissed for failure to state a claim. With respect to Count II, they argue that she failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and that she failed to meet the requirement under Federal Rule of Civil Procedure 9(b) that the circumstances of a fraud be stated with particularity. Having found that McCauley's tort claim was not preempted, we turn to Appellees' alternative arguments.

## 1.

Appellees argue that dismissal of Count II was appropriate under Rule 12(b)(6) because McCauley failed to state a claim for fraud. To demonstrate fraudulent misrepresentation, a plaintiff must prove "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." *Folio v. City of Clarksburg*, 655 S.E. 2d 143, 150 (W. Va. 2007) (internal quotation marks and citations omitted). McCauley alleges each of these elements, which Appellees attempt to rebut.

Appellees first contend that there was no misrepresentation. They assert that they made no representation to McCauley that her home was appraised for $51,000 but simply made her a loan based on that amount. Putting aside the fact that fraud may arise from a "party's willful nondisclosure of a material fact," *Kessel v. Leavitt*, 511 S.E.2d 720, 752 (W. Va. 1998) (quotation marks and citation omitted), McCauley *does* assert in her complaint that she "believed, based on representations

from Ocean Bank, that her home had been valued at or in excess of $51,000." J.A. 100.

Second, Appellees claim McCauley does not allege justifiable reliance, because a lender has no duty to notify a buyer regarding the value of collateral. Regardless of whether a lender has such a duty, however, McCauley alleges in her complaint that she was so notified. A lender that informs a borrower about how much her property is worth, whether required to do so or not, is under an obligation not to misrepresent that value. *See generally* Restatement (Second) of Torts § 525.

We therefore find no basis for dismissal of McCauley's fraud count on Rule 12(b)(6) grounds.[5]

### 2.

Appellees argue that McCauley did not plead the circumstances of the alleged fraud with the degree of particularity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) simply states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." We have elaborated that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah*

---

[5]Appellees also assert that McCauley's claim was not plausible on its face, as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The banks argue that McCauley fails to allege how the making of under-collateralized loans would be in the interest of a lender, which makes her claim implausible. *See Goldstein v. Bank of America, N.A.*, No. 1:09cv329, 2010 WL 1252641, at *4 (W.D.N.C. Jan. 19, 2010). However, as McCauley explains, "[l]enders have incentives to inflate the value of a home because the larger the loan, the larger the proceeds to the lender." Reply Br. at 15. We find her fraud claim sufficiently plausible on its face to conclude that it survives a motion to dismiss.

*River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation. *Id.*; *see also U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, ___ F.3d ___, 2013 WL 136030, at *3 (4th Cir. Jan. 11, 2013).

We "should hesitate to dismiss a complaint under Rule 9(b) if [we are] satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. From McCauley's complaint, we are able to glean the following facts: (1) the time of the alleged fraud was late summer or fall, 2006, when the appraisal and loan were made; (2) the appraisal was undertaken at McCauley's home, to which Ocean Bank sent an appraiser; (3) the false representation consisted of the representation from Ocean Bank that McCauley's home was worth $51,000 or more; (4) the identity of the person making the misrepresentation was Ocean Bank; and (5) as a result of the misrepresentation, McCauley agreed to the $51,000 loan. J.A. 99-101. Moreover, McCauley's fraud complaint is not the type of frivolous action or strike suit Rule 9(b) is designed to avert.

Thus, we hold that McCauley's complaint meets the requirements of Rule 9(b).**[6]** In concluding that McCauley

---

**[6]**Appellees further argue that McCauley fails to state a claim against Deutsche Bank because it is a subsequent holder of her mortgage and did not participate in the alleged fraud of the originating lender. They note that Rule 9(b) requires that where fraud claims are asserted against multiple defendants, the claim must allege the facts outlining each defendant's par-

properly states a claim for fraud, we make no judgment as to the merits of her argument, but simply determine that it would be incorrect to prevent her from pursuing her claim in district court at this stage.

### III.

In conclusion, we affirm the district court's dismissal of Appellant's claim for unconscionable contract, reverse its dismissal of her claim for fraud, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*

---

ticipation in the fraud. Therefore, they argue, because McCauley's allegations all deal only with Ocean Bank's actions, she fails to properly state a fraud claim against Deutsche Bank, which is only derivatively liable. However, "in a suit to enforce a lien securing a negotiable note, the same defenses are generally available as would be in a suit on the note itself." *Miller v. Diversified Loan Service Co.*, 382 S.E.2d 514, 517 (W. Va. 1989); *see also* W. Va. Code section 46-3-305; *Herrod v. First Republic Mortg. Corp., Inc.*, 625 S.E.2d 373, 388 (W. Va. 2005) (Starchar, J., concurring) ("To the extent that borrowers are defrauded, as a matter of contract law, they have defenses against the holder of the obligation in an action for recoupment."). McCauley's fraud claim against Deutsche Bank thus may not be dismissed on this basis.