**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1125

HERBERT A. MCFADDEN; ROSETTA E. MCFADDEN,

Plaintiffs - Appellants,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION; FLAGSTAR BANK, FSB;
SAMUEL I. WHITE, P.C.,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  James C. Turk, Senior
District Judge. (7:11-cv-00335-JCT)

Argued: January 30, 2013                 Decided: May 20, 2013

Before WILKINSON, KEENAN, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the
majority opinion, in which Judge Wilkinson joined.  Judge Wynn
wrote a dissenting opinion.

**ARGUED:** Thomas Dean Domonoske, Harrisonburg, Virginia, for
Appellants.  Joseph Samuel Dowdy, NELSON MULLINS RILEY &
SCARBOROUGH, LLP, Raleigh, North Carolina; Ronald James Guillot,
Jr., SAMUEL I. WHITE, PC, Virginia Beach, Virginia, for
Appellees.  **ON BRIEF:** George E. Kostel, NELSON MULLINS RILEY &
SCARBOROUGH, LLP, Washington, D.C., for Appellees Federal
National Mortgage Association and Flagstar Bank, FSB.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Herbert A. McFadden and Rosetta E. McFadden (the McFaddens) filed a complaint in a Virginia state court against Flagstar Bank, F.S.B. (Flagstar), Federal National Mortgage Association (Fannie Mae), and Samuel I. White, P.C. (White, P.C.) (collectively, the defendants), asserting various claims relating to the foreclosure and sale of the McFaddens' home. After the defendants removed the action to the federal district court, the McFaddens filed a motion to remand the case to the state court on the ground that the district court lacked subject matter jurisdiction. The district court summarily denied the motion to remand. After a hearing, the court granted the defendants' motions to dismiss. Among other things, the court held that the McFaddens failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The McFaddens filed a timely appeal to this Court.

Upon our review, we hold that the district court did not err in denying the McFaddens' motion to remand, because the court had diversity jurisdiction over the McFaddens' claims pursuant to 28 U.S.C. § 1332. We further hold that the district court did not err in dismissing under Rule 12(b)(6) their claim to quiet title and their equitable claim to set aside the foreclosure sale, because those claims lacked a sufficient factual and legal basis.

3

I.

The McFaddens alleged in their complaint the following facts, which we accept as true for purposes of this appeal.[1] In July 2007, the McFaddens obtained a loan from Flagstar for $116,500, which was secured by a deed of trust on the McFaddens' home in Pulaski County, Virginia (the property). The terms of the loan were set forth in a note, in which the McFaddens agreed to make monthly payments of about $900 for 20 years.

The terms of the note established that Flagstar could freely transfer the note to a third party without notice to the McFaddens. The deed of trust similarly provided for the free transfer of the note and stated that the agreements in the deed of trust "shall bind . . . and benefit the successors and assigns" of the lender. The deed of trust named Flagstar as the lender, and named Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and "nominee for Lender and Lender's successors and assigns."

At some point before August 2009, Flagstar transferred the note to Fannie Mae, but retained the obligation to receive the loan payments and continued to function as the "servicer" on the loan. After the McFaddens began having trouble making loan

---

[1] We employ this standard because the case was decided on a motion to dismiss under Rule 12(b)(6). Flood v. New Hanover Cnty., 125 F.3d 249, 251 (4th Cir. 1997).

payments, Flagstar sent them a letter describing the Home Affordable Modification Program (HAMP), a federal program designed to help certain homeowners who are financially unable to meet their current mortgage obligations.  See U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009)[2]; see also Loan Modification Group, Inc. v. Reed, 694 F.3d 145, 147 (1st Cir. 2012) (describing HAMP).  The letter stated that if the McFaddens qualified under HAMP and complied with the terms of a "trial period plan," their loan would be modified, permitting them to avoid foreclosure.

In response to this letter, the McFaddens submitted documentation to Flagstar seeking to qualify for a loan modification, and the application process continued over a period of many months.  According to Flagstar, the process was delayed due to the McFaddens' failure to submit all the required documents.  The McFaddens alleged, however, that Flagstar lost certain documents that they had submitted, and required them to provide various duplicate items on several occasions.  Before receiving a final decision on their loan modification application, the McFaddens were notified that because they

---

[2] Available at http://www.treasury.gov/press-center/press-releases/documents/modification_program_guidelines.pdf.

5

defaulted on the loan, their property would be sold at auction on March 10, 2011 (the foreclosure sale).

The notice of foreclosure was signed by White, P.C., which was listed as substitute trustee. Attached to that notice was a document executed by Flagstar, stating that it was "the present holder or the authorized agent of the holder of the note secured by the deed of trust," and that, as such entity, Flagstar had appointed White, P.C. as substitute trustee.

Upon receiving the notice of foreclosure, the McFaddens contacted Flagstar, and a Flagstar representative allegedly informed them orally that "their loan modification was in process, and that no foreclosure would occur." However, the foreclosure sale proceeded in accordance with the terms contained in the notice. Flagstar was the highest bidder at the sale, and purchased the property for $123,009.

Flagstar assigned its rights in the property to Fannie Mae, after which White, P.C. executed and delivered a deed of trust transferring the property to Fannie Mae (the foreclosure deed). About one week after the foreclosure sale, the McFaddens received written notice from Flagstar that their loan modification application had been denied.

Fannie Mae filed an unlawful detainer action in Virginia state court against the McFaddens, seeking to evict them and to take possession of the property. In response, the McFaddens

6

filed the present action in Virginia state court against the defendants asserting six claims, including the quiet title claim and a claim for equitable relief to set aside the foreclosure sale. The McFaddens also asserted violations of the Virginia Consumer Protection Act (VCPA) against White, P.C.[3] The defendants removed the case to the federal district court, on the basis that the court had federal question jurisdiction under 28 U.S.C. § 1331. According to the defendants, the McFaddens' claims were governed by the Home Owners Loan Act (HOLA), 12 U.S.C. §§ 1461–1470.

The McFaddens filed a motion to remand, contending that the district court lacked subject matter jurisdiction because the claims presented only questions of state law. In opposition to the motion to remand, Flagstar and Fannie Mae argued that in addition to federal question jurisdiction, the district court had diversity jurisdiction over the action in accordance with 28 U.S.C. § 1332. Flagstar and Fannie Mae contended that even though both the McFaddens and one defendant, White, P.C., were citizens of Virginia, there was complete diversity of the parties because the McFaddens lacked any possible cause of action against White, P.C. and, therefore, under the doctrine of

---

[3] The McFaddens also asserted claims of negligence against Flagstar and fraudulent conduct against Flagstar and Fannie Mae.

7

fraudulent joinder, White, P.C.'s citizenship should not be considered.

The district court summarily denied the McFaddens' motion to remand, and did not state on which basis the court was exercising jurisdiction. The court proceeded to consider the defendants' motions to dismiss the case. After a hearing, the district court granted the motions to dismiss, concluding that HOLA preempted the McFaddens' claims and, alternatively, that the McFaddens' complaint failed to state a claim under Rule 12(b)(6). The McFaddens timely filed the present appeal.

## II.

### A.

The McFaddens contend that the district court lacked subject matter jurisdiction over their state law claims. We review de novo questions of subject matter jurisdiction, including questions related to the propriety of removal. Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159 (4th Cir. 2010). Because of concerns involving principles of federalism, this Court strictly construes a district court's jurisdiction when considering an issue of removal. Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the appropriate district court. 28 U.S.C. § 1441(a). The defendants argue that the district court had both federal question jurisdiction and diversity jurisdiction over the McFaddens' claims.

We first consider whether the district court had jurisdiction over the removed action on the basis of diversity of citizenship of the parties. To invoke the district court's diversity jurisdiction, the parties must be completely diverse, meaning that none of the plaintiffs shares citizenship with any of the defendants, and the amount in controversy must exceed the jurisdictional threshold. 28 U.S.C. § 1332; Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999); Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). In the present case, the parties do not dispute that the required amount in controversy is satisfied. Instead, they focus their arguments on the question whether the parties are completely diverse, given the fact that the McFaddens and White, P.C. are both citizens of Virginia.

The McFaddens assert that because White, P.C. is a defendant in their quiet title, equitable, and VCPA claims, the parties to the lawsuit do not meet the requirement of complete

9

diversity. In response, the defendants contend that White, P.C. was a fraudulently joined party, because the McFaddens lacked any possible cause of action against White, P.C. Therefore, the defendants submit that the citizenship of White, P.C. was not a barrier to diversity jurisdiction in this case. See Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir. 1999) (explaining that when a party is fraudulently joined, courts disregard that party's citizenship for jurisdictional purposes). We agree with the defendants' argument that the parties were completely diverse.

The doctrine of fraudulent joinder permits a federal court to "disregard, for jurisdictional purposes," the citizenship of non-diverse defendants. Mayes, 198 F.3d at 461. A defendant alleging fraudulent joinder must show either that: (1) "there is no possibility that the plaintiff would be able to establish a cause of action" against the non-diverse party, or (2) there has been "outright fraud in the plaintiff's pleading of jurisdictional facts." Hartley, 187 F.3d at 424 (internal quotations, emphasis, and citation omitted).

In the present case, the defendants maintain that the citizenship of White, P.C. should be disregarded for jurisdictional purposes because the McFaddens lacked any possible cause of action against White, P.C., the non-diverse party. Thus, as applied here, use of the term "fraudulent

10

joinder" effectively is a misnomer, because application of the doctrine under the present facts "does not reflect on the integrity" of the plaintiff, AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990), but merely addresses the adequacy of the plaintiffs' pleadings.

As a preliminary matter, we consider the McFaddens' contention that we should refrain from considering whether White, P.C. was a fraudulently joined party, and instead should permit the district court to consider that question in the first instance. We decline this request because, as a court of limited jurisdiction, we have an obligation to determine our own jurisdiction, as well as the jurisdiction of the district court. Stephens v. Cnty. of Albemarle, 524 F.3d 485, 490 (4th Cir. 2008) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). Thus, we will consider directly the issue of subject matter jurisdiction in this case. See Leimbach v. Allen, 976 F.2d 912, 916 (4th Cir. 1992); see also In re Kirkland, 600 F.3d 310, 314-15 (4th Cir. 2010) ("Subject matter jurisdiction cannot be forfeited or waived" and can be raised sua sponte by the court) (citation omitted).

Additionally, we observe that the argument regarding fraudulent joinder was raised in the district court in the pleading filed by Flagstar and Fannie Mae opposing remand to the state court. The district court's failure to address that

11

argument does not preclude this Court from considering it. <u>Cf.</u> <u>Eisenberg v. Wachovia Bank, N.A.</u>, 301 F.3d 220, 222 (4th Cir. 2002) (explaining that this Court can affirm a judgment on any basis supported by the record). Moreover, on the present record, further development of the facts would not aid our analysis. Therefore, we proceed to consider the question whether the fraudulent joinder doctrine is applicable, thereby permitting the district court to exercise diversity jurisdiction over the case.[4] In conducting this analysis, we resolve all issues of law and fact in the plaintiff's favor. <u>Hartley</u>, 187 F.3d at 424.

As noted above, in the McFaddens' complaint, they asserted claims against White, P.C. in three different counts, namely, the quiet title claim, the claim for equitable relief to set

_____

[4] The dissenting opinion cites <u>In re Blackwater Security Consulting, LLC</u>, 460 F.3d 576 (4th Cir. 2006) to support the position that we should not consider the defendants' diversity jurisdiction and fraudulent joinder arguments. <u>Post</u> at 26. However, the decision in <u>Blackwater</u> is inapposite. In contrast to the present case, the district court in <u>Blackwater</u> remanded the removed action to state court for want of jurisdiction. 460 F.3d at 582. On appeal, we held that 28 U.S.C. § 1447(d) barred our review of the remand order. <u>Id.</u> at 595. In a footnote, we explained our refusal to consider the appellant's argument that the court had jurisdiction because appellant was a federal officer, stating that the argument had not been raised in the district court. <u>Id.</u> at 590 n.8. Here, the issues of fraudulent joinder and diversity jurisdiction were raised in the district court, and the district court exercised its jurisdiction over the removed action without articulating a basis for jurisdiction.

aside the foreclosure sale, and the VCPA claim.[5]  We address each of these claims in turn.

An action to quiet title is "based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title."  Maine v. Adams, 672 S.E.2d 862, 866 (Va. 2009).  In such an action, a plaintiff seeks to compel an "adverse claimant to prove a competing ownership claim or forever be barred from asserting it."  Id.

In their quiet title claim, the McFaddens asserted that the foreclosure sale was unlawful, because the deed of trust and the appointment of White, P.C. as substitute trustee were invalid. By seeking to void the foreclosure sale, the McFaddens impliedly alleged that neither the purchaser of the property at auction, Flagstar, nor its assignee, Fannie Mae, held good title to the property.  Accordingly, in this claim, the McFaddens contended that they remained the true owners of the property.

The McFaddens have not alleged, nor could they, that White, P.C. had any basis for asserting a competing ownership claim to the property.  Under Virginia law, a trustee executing a

---

[5] Our determination whether there is any possibility that the McFaddens would be able to establish a right to relief under these state law claims against White, P.C. is informed by Virginia law.  See generally Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

13

foreclosure takes possession of the property in order to sell it. Va. Code § 55-59(7). As trustee, White, P.C. was divested of any interest in the property after the foreclosure sale when White, P.C. delivered the foreclosure deed conveying the property to Fannie Mae. See Sovran Bank, N.A. v. Creative Indus., Inc., 425 S.E.2d 504, 505 n.2 (Va. 1993) (a "trustee under a deed of trust retains legal title to the property until the deed is delivered"). Thus, the McFaddens' sole basis for asserting their quiet title claim against White, P.C. rested on their assertion that, under the deed of trust, White, P.C. could not have taken legal possession of the property and transferred it to the auction purchaser Flagstar, or to its assignee, Fannie Mae.

We conclude that there was no possibility that the McFaddens could have prevailed on this claim against White, P.C. The provision of the deed of trust permitting the appointment of a substitute trustee conformed with the requirements of Virginia Code Section 55-59(9). Under that statute, the party secured by the deed of trust or the holder of more than fifty percent of the obligations secured thereby has authority to appoint a substitute trustee. Id.

Flagstar was not prohibited from appointing a substitute trustee simply because Flagstar had assigned the loan to Fannie Mae. Such a transfer, which is permitted under the plain

14

language of the deed of trust and the note, did not impede Flagstar's ability to serve as the new lender's agent. See Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 622 (4th Cir. 2011) (explaining that entity other than lender had authority to foreclose under Virginia law despite transfer of loan, based on entity's status as note holder). Therefore, White, P.C. properly was appointed under the deed of trust, and had authority to act as substitute trustee and to perform the attendant duties authorized by Virginia law. See Va. Code § 55-59(7), (9).

We next conclude that the McFaddens lacked any possibility of prevailing on their claim for equitable relief to set aside the foreclosure sale, which they alleged as an alternative to the quiet title claim. In the allegations specifically supporting this claim for equitable relief, the only defendant referenced was Flagstar. The McFaddens asserted that Flagstar made numerous misrepresentations regarding the loan modification program and application process, including that the pending loan modification application would prevent foreclosure of the property. These allegations, which did not mention White, P.C. or its role in the foreclosure sale, plainly did not state a claim against White, P.C., nor can we discern any possible cause of action against White, P.C. related to this claim.

15

Finally, we hold that the McFaddens lacked any possibility of prevailing on their VCPA claim against White, P.C., which was the sole defendant named in this claim. In the VCPA claim, the McFaddens alleged that under Virginia Code Section 59.1-198, White, P.C. was a "supplier," and that the loan and related foreclosure sale were "part" of a "consumer transaction."[6]

The McFaddens asserted two bases for their allegation that White, P.C. violated the VCPA. First, they asserted that White, P.C. misrepresented that it had been properly appointed as substitute trustee, because Flagstar was not authorized to make that appointment after it assigned the note to Fannie Mae. Second, the McFaddens alleged that White, P.C. misrepresented that it would serve as a fiduciary to the McFaddens, and that White, P.C. breached its fiduciary duties. We address each asserted VCPA violation in turn.

First, the VCPA is inapplicable to any "aspect of a consumer transaction" that is "authorized" under Virginia law. Va. Code § 59.1-199(A). As we already have stated in our above discussion of the McFaddens' quiet title claim, the appointment

---

[6] The purpose of the VCPA is to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. We assume without deciding, for purposes of this appeal, that White, P.C. could qualify as a "supplier" engaged in a "consumer transaction" by conducting the foreclosure sale.

16

of substitute trustees and the process for such appointments is set forth in Virginia Code Section 55-59(9), which authorizes the party secured by the deed of trust or the holder of more than fifty percent of the obligations secured thereby to appoint a substitute trustee. Id. As we further explained above, the appointment of White, P.C. as substitute trustee under the deed of trust met the requirements of Virginia law. See id. Therefore, because the appointment of White, P.C. as substitute trustee was valid under Virginia law, the VCPA did not provide a basis in law for this component of the McFaddens' VCPA claim.

We next consider the second component of the McFaddens' VCPA claim, namely, that White, P.C. misrepresented that it would act as a fiduciary toward the McFaddens, and that White, P.C. breached its fiduciary duties. However, under Virginia law, the duties of a trustee appointed under a deed of trust are limited and defined by the instrument under which the trustee acts. Warner v. Clementson, 492 S.E.2d 655, 657 (Va. 1997). The McFaddens have not alleged that White, P.C. owed them such unspecified fiduciary duties under the terms of the deed of trust, and the VCPA does not provide an independent basis for maintaining a claim based on this vague, unsupported allegation regarding White, P.C. Thus, we hold that the McFaddens lacked any possibility of establishing their claim under the VCPA against White, P.C., because they have presented neither a legal

nor a factual foundation that would give rise to any such right of recovery.

Because we conclude that the McFaddens lacked any possibility of prevailing on their three claims against White, P.C., we hold that, under the fraudulent joinder doctrine, the citizenship of White, P.C. should not be considered for jurisdictional purposes. See Mayes, 198 F.3d at 461. Therefore, we hold that the district court did not err in denying the McFaddens' motion to remand the action to state court, because the remaining parties were completely diverse.[7] See 28 U.S.C. § 1332(a).

B.

The McFaddens also appeal the district court's order dismissing two of their state law claims discussed above, namely, their quiet title claim and their claim for equitable relief to set aside the foreclosure sale.[8] The McFaddens contend that the district court erred in concluding that these claims were preempted by HOLA, and, alternatively, in concluding that these claims failed to state a claim under Rule 12(b)(6). We

---

[7] Based on this conclusion, we need not consider the defendants' additional argument that the district court had federal question jurisdiction over the action.

[8] The McFaddens do not challenge the dismissal of their remaining claims asserted in the complaint.

18

focus our analysis on the court's dismissal of the claims under Rule 12(b)(6).

We review de novo the district court's dismissal of a complaint for failure to state a claim. Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a plausible claim for relief and allege sufficient facts to establish the elements of the claim. Id. (citations omitted).

As set forth above, in the McFaddens' quiet title claim, they challenged the validity of the deed of trust and of the appointment of White, P.C. as substitute trustee. They first alleged that the deed of trust improperly named MERS as the beneficiary, when the true beneficiary of the deed of trust was the lender. This contention is without merit, however, because the plain language of the deed of trust sets forth that MERS, as beneficiary, is "acting solely as a nominee for Lender and Lender's successors and assigns." As we explained in our decision in Horvath, naming MERS as the beneficiary was valid and served merely to establish a consistent beneficiary that enhanced "the ease with which the deed of trust could be transferred." 641 F.3d at 620.

The McFaddens additionally alleged in their quiet title claim that the deed of trust, and the appointment of White, P.C. as substitute trustee, were invalid. As we explained above,

19

however, those claims are groundless because the deed of trust providing for the appointment of a substitute trustee, and the appointment of White, P.C. in that capacity, conformed with the requirements of Virginia law. See Va. Code § 55-59(9).

Because of their inability to demonstrate that the deed of trust and the document appointing White, P.C. as the substitute trustee were invalid instruments, the McFaddens have failed to state a valid claim of ownership in the property. See Adams, 672 S.E.2d at 866. Therefore, we conclude that the district court properly dismissed their quiet title claim under Rule 12(b)(6).

In the McFaddens' claim for equitable relief to set aside the foreclosure sale, they alleged that Flagstar made the following misrepresentations: (1) that Flagstar would provide them with a loan modification if they met certain criteria; (2) that the McFaddens' loan application materials were incomplete; and (3) that the McFaddens should disregard the notice of foreclosure due to their pending loan modification request. In essence, the McFaddens asserted that they relied on oral promises by Flagstar that it would modify the terms of the loan and that the foreclosure and sale of the property, of which the McFaddens were notified in writing, would not take place.

While any such promises certainly would have been improper, such alleged oral promises cannot serve as a basis to set aside

a foreclosure sale of real property. Under the statute of frauds, as provided under Virginia law, oral promises and contracts affecting real property are not enforceable. Va. Code § 11-2.

Moreover, the McFaddens do not dispute the fact that they defaulted on their loan. The terms of the deed of trust remained in effect and authorized the foreclosure and sale of the property. Therefore, we conclude that the McFaddens failed to state a claim for equitable relief to set aside the foreclosure sale, and that the district court did not err in dismissing this claim under Rule 12(b)(6).[9]

III.

In sum, based on our conclusion that the district court had diversity jurisdiction over the removed action, and that the court correctly determined that the quiet title claim and the claim for equitable relief to set aside the foreclosure sale were subject to dismissal under Rule 12(b)(6), we affirm the district court's judgment.

AFFIRMED

---

[9] Based on this conclusion, we need not consider the district court's alternative basis for dismissal of these claims, relating to preemption under HOLA.

WYNN, Circuit Judge, dissenting:

Plaintiffs Herbert and Rosetta McFadden filed state-law claims in a state court. Only one of the three named defendants, Flagstar Bank, FSB, took action to remove the case from state court to federal court. And it did so on only one ground: purported federal question jurisdiction.

On appeal, Defendant Samuel I. White, P.C. ("White") argued, for the first time ever, that even in the absence of federal question jurisdiction, it was fraudulently joined as a defendant and thus diversity jurisdiction also exists. Neither Flagstar Bank nor Federal National Mortgage Association ("Fannie Mae") advanced this argument in their jointly-filed brief.

Nevertheless, on appeal, this Court ignores the stated ground for removal—federal question jurisdiction—and "hold[s] that the district court did not err in denying the McFaddens' motion to remand, because the court had diversity jurisdiction over the McFaddens' claims . . . ." In short, the majority bases federal jurisdiction on a ground that Defendants failed to properly preserve. With this, I cannot agree. Because I believe that the McFaddens' state-law claims should be sent back to state court, I respectfully dissent.

22

Herbert and Rosetta McFadden went to state court, with state-law claims against Fannie Mae, Flagstar Bank, and White. The McFaddens alleged that they applied for a loan modification for their home mortgage, but that Flagstar Bank repeatedly lost their modification materials, stymying the process. The McFaddens alleged that they received a foreclosure notice but that Flagstar Bank affirmatively told them "not to worry," that their loan modification was "in process," and that "no foreclosure would occur" while that process was ongoing. J.A. 10. Instead, however, the McFaddens' home was foreclosed upon, allegedly improperly by White, with Flagstar Bank itself the high bidder at the foreclosure sale. The McFaddens, in turn, brought claims to quiet title, to set aside foreclosure, and for fraud, breach of contract, negligence, and violation of Virginia's Consumer Protection Act in the Circuit Court for the County of Pulaski.

The sole party to file a notice of removal was Flagstar Bank.[1] Its lone reason: federal question jurisdiction. Flagstar Bank claimed that the McFaddens' state-law claims were

---

[1] Neither Fannie Mae nor White joined the notice of removal or filed its own removal papers. Flagstar Bank's notice of removal simply alleges, "upon information and belief, [that] both . . . consent to the removal of this action."

completely preempted or, alternatively, presented a substantial federal question such that they were removable to federal court. Nowhere in its notice of removal did Flagstar Bank even suggest that the McFaddens' complaint was removable on diversity grounds due to alleged fraudulent joinder. The only place Flagstar Bank, then along with Fannie Mae, suggested that the McFaddens had fraudulently joined White was in the final two paragraphs of the 15-page brief in opposition to the McFaddens' motion to remand the matter to state court. Perhaps realizing that their belated and cursory treatment of this issue below was insufficient to preserve it, Flagstar Bank and Fannie Mae made not a single mention of this purported basis for removal in their appellee brief. Indeed, as this panel noted at oral argument, Flagstar Bank's and Fannie Mae's appellee brief failed to meaningfully argue anything beyond complete preemption as a basis for federal jurisdiction.

Meanwhile, White, the allegedly fraudulently joined defendant, never so much as hinted at this argument until the case reached this Court. Indeed, at oral argument, White plainly admitted that it should have raised the fraudulent joinder issue earlier yet inexplicably failed to do so.

24

II.

It is axiomatic that federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accordingly, "[w]e presume that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." Barbour v. Int'l Union, 640 F.3d 599, 605 (4th Cir. 2011) (en banc) (quotation marks omitted).

"Removal statutes, in particular, must be strictly construed, inasmuch as the removal of cases from state to federal court raises significant federalism concerns." Id. See also Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005) (Wilkinson, J.) ("not[ing] our obligation 'to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated' by it"). In turn, any doubts about the propriety of removal should be resolved against the federal forum and in favor of remanding to state court. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc). Against this backdrop, the statute governing removal explicitly requires that defendants file and serve a notice containing "a short and plain statement of the grounds for removal" within thirty days of a complaint's service. 28 U.S.C. § 1446(a). While a defendant may amend freely during the 30-day period in which notice of removal must be filed and may be allowed to

25

correct defective allegations thereafter, a defendant may "not [] add a new basis for removal jurisdiction." 16 Moore's Federal Practice § 107.30[2][b] (3d ed. 2012). Put differently, "defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon." 14C Wright & Miller Federal Practice & Procedure, Jurisdiction & Related Matters § 3733 (4th ed. 2012).

Accordingly, in In re Blackwater Security Consulting, LLC, this Court refused to deem a notice of removal amended to add a basis for federal jurisdiction not pled below. 460 F.3d 576, 590 n.8 (4th Cir. 2006). District courts throughout this Circuit have similarly forbidden defendants from "attempt[ing] to amend [their] Notice[s] of Removal" via memoranda in opposition to motions to remand, holding that "[a] defendant may not use a memorandum to attempt to amend his notice of removal to add a basis for removal[,]" and making plain that new bases not timely asserted in the removal notice will be rejected. UMLIC Consolidated, Inc. v. Spectrum Fin. Servs. Corp., 665 F. Supp. 2d 528, 533 (W.D.N.C. 2009) (ordering remand to state court, holding that diversity jurisdiction was lacking, and rejecting defendant's attempt to amend its removal notice after

26

expiration of the 30-day removal period with arguments in remand opposition brief that a named party was not a real party in interest and that its citizenship should be disregarded). See also, e.g., Phillips v. BJ's Wholesale Club, Inc., 591 F. Supp. 2d 822 (E.D. Va. 2008) (remanding to state court for lack of diversity jurisdiction, holding that diversity jurisdiction did not exist where removal notice alleged nothing about fraudulent joinder, and failure to timely raise the issue, asserted for the first time in response to a motion to remand, was not a mere technical defect that warranted leave to amend removal notice beyond the 30-day time limit); Tincher v. Ins. Co. of Penn., 268 F. Supp. 2d 666 (E.D. Va. 2003) (remanding and denying motion to amend removal notice to allege fraudulent joinder where no allegation of fraudulent joinder was made in notice and defendant did not raise the issue until its response to plaintiff's motion to remand); Castle v. Laurel Creek Co., Inc., 848 F. Supp. 62, 64 (S.D. W.Va. 1994) (remanding to state court and denying belated attempt to add fraudulent joinder allegation to notice of removal); Barnhill v. Ins. Co. of N. Am., 130 F.R.D. 46, 51 (D.S.C. 1990) (Hamilton, J.) (remanding to state court and noting that "the overwhelming majority of courts allow amendment after expiration of the statutory period for removal only for the purpose of setting forth more specifically *each* ground for removal which had been imperfectly set forth in the

original petition" but "deny leave to amend to supply missing allegations or to supply new allegations").

As then-District Court Judge Hamilton underscored in Barnhill, "a number of compelling policy considerations . . . require this court to apply a very restrictive view of amendment-at least after the statutory period for removal . . . has expired." 130 F.R.D. at 50. Those considerations include: "preventing federal court infringement upon rightful independence and sovereignty of state courts[;]" "reducing uncertainty as to the court's jurisdiction in the marginal cases, which a more liberal construction of the removal statute would promote[;]" "allowing amendment of the notice of removal . . . after the thirty day time limit for removal specified . . . would 'substantially eviscerate' the specific time provision enacted by Congress[;]" and "conceding that the traditional justification for diversity jurisdiction-state court hostility toward nonresident defendants-has been significantly reduced since the time diversity jurisdiction was created[.]" Id. at 50-51.

Turning to the case at hand, it is clear that not one of the three named defendants raised fraudulent joinder as a basis for federal jurisdiction in the requisite removal papers. Nor did any of the three named defendants at any time move to amend the notice of removal to add any such allegations. Instead,

28

White, the only defendant to argue diversity in its brief to this Court, plainly admitted that in doing so, it was, for the first time ever, raising fraudulent joinder and diversity jurisdiction. Flagstar Bank and Fannie Mae raised fraudulent joinder and diversity jurisdiction below only as a fleeting alternative argument in their opposition to the McFaddens' motion to remand. And before this Court, they argued fraudulent joinder and diversity jurisdiction not once in their brief, and only half-heartedly in oral argument, when prompted to do so by this panel.

As noted during oral argument, where substantial effort has been expended, courts may view removal defects through a different lens. Indeed, the Supreme Court instructed us to do so in Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996), holding that a district court's failure to remand a case improperly removed on diversity grounds was not fatal to the ensuing adjudication if federal jurisdictional requirements were met when trial occurred and judgment was entered. Notably, however, the Supreme Court emphasized that "[o]nce a diversity case has been tried in federal court, with rules of decision supplied by state law . . ., considerations of finality, efficiency, and economy become overwhelming." Id. at 75 (emphasis added).

29

In _Aqualon Co. v. Mac Equipment, Inc._, this Court extended the _Caterpillar_ rationale to dispositive motions such as summary judgment, stating:

> Where a matter has proceeded to judgment on the merits and principles of federal jurisdiction and fairness to parties remain uncompromised, to disturb the judgment on the basis of a defect in the initial removal would be a waste of judicial resources. Although the interest in judicial economy is most pressing where an action has proceeded to trial, we feel that the same considerations are applicable to summary judgment.

149 F.3d 262, 264-65 (4th Cir. 1998).

No such compelling judicial economy or efficiency arguments exist here. This case was pending before the district court for less than a half year prior to its dismissal, Defendants had not even answered Plaintiffs' complaint, and no discovery had been undertaken, nor anything else of substance accomplished beyond summarily denying remand in an order devoid of any analysis and granting Defendants' motions to dismiss. On this record, there are very serious federalism implications of wresting this state-law complaint from state court, overlooking the clear pleadings failures of well-represented defendants, and ruling for the first time on appeal on the unpreserved fraudulent joinder and diversity issues.

Nor have Defendants presented any other convincing basis for maintaining this case in federal court.[2] Flagstar Bank and Fannie Mae concededly put their eggs in the complete preemption basket. Complete preemption is an exception to the well-pleaded complaint rule dictating that the basis for a federal district court's removal jurisdiction must appear on the face of a plaintiff's complaint. The Supreme Court has read complete preemption into statutory schemes in only three contexts: Section 301 of the Labor and Management Relations Act (29 U.S.C. § 185); Section 502 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1132); and Sections 85 and 86 of the National Bank Act (12 U.S.C. §§ 85, 86). Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-11 (2003). I cannot imagine that it would find a fourth in the circumstances of this case.

While neither the Supreme Court nor this Court has addressed whether HOLA completely preempts state law such that it coverts exclusively state-law claims into a federal complaint, a number of district courts have held that it does not. For example, in McKenzie v. Ocwen Federal Bank, 306 F.

---

[2] The federal question basis set forth in the notice of removal presents a thorny issue. By reaching beyond Defendants' preserved basis for removal to get to diversity jurisdiction, this Court avoids the first-impression issue of whether HOLA completely preempts state law such that it coverts exclusively state-law claims into a federal complaint.

Supp. 2d 543 (D. Md. 2004), the district court held that HOLA did not completely preempt the borrowers' state-law claims against the defendant national bank for charging inspection fees prohibited by state law, and thus did not justify removal of the case to federal court. The court noted that the HOLA provisions on which the defendant's complete preemption argument was based do not provide an exclusive cause of action. Id. at 546. Further, the court ruled that no substantial federal question existed and that that issue boiled down to a preemption defense— which could not serve as a basis for removal. Id. at 547. The court therefore remanded.

It seems self-evident that HOLA does not completely preempt all state-law claims, including claims grounded in fraud, such as the McFaddens'. This is because the HOLA preemption regulation includes a savings clause expressly exempting certain state-law claims from HOLA's preemptive scope. 12 C.F.R. § 560.2(c). This Court's recent opinion in McCauley v. Home Loan Investment Bank, FSB, underscores the limited nature of HOLA preemption:

> OTS "does not intend to preempt state laws that establish the basic norms that undergird commercial transactions," and "[a]ccordingly, in § 560.2(c), the OTS has identified certain categories of state law that are not preempted." OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996). Tort law is one of these categories. See 12 C.F.R. § 560.2(c); see also Lending & Investment, 61 Fed. Reg. at 50966

32

("OTS wants to make clear that it does not intend to preempt basic state laws such as state uniform commercial codes and state laws governing real property, contracts, torts, and crimes."). Determining that the tort of fraud falls within the scope of § 560.2 would preclude fundamental state regulation of deceptive practices in which unscrupulous savings and loan associations might engage. Such an interpretation would contravene the intent of OTS, whose "assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." Ocwen, 491 F.3d at 643.

__ F.3d __, 2013 WL 1189292, at *5 (4th Cir. 2013).

At the very least, because "we must construe removal strictly [and] reasonable doubts must be resolved against the complete preemption basis for it," Lontz, 413 F.3d at 441 (Wilkinson, J.), Defendants should not be allowed to force the McFaddens to litigate their state claims in federal court on the basis of purported complete preemption.

Finally, at the end of their removal discussion in their brief, Defendants touched on the substantial federal question doctrine. "Under the substantial federal question doctrine, a defendant seeking to remove a case in which state law creates the plaintiff's cause of action must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial. If the defendant fails to establish either of these elements, the claim does not arise under federal law

33

pursuant to the substantial federal question doctrine, and removal cannot be justified under this doctrine." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quotation marks and citation omitted). See also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005) (instructing courts to analyze whether the federal issue is necessary, disputed, and substantial, and whether the federal court's accepting jurisdiction would disrupt the balance between state and federal judicial responsibilities).

Here, Flagstar Bank and Fannie Mae have failed to meet their burden. Flagstar Bank and Fannie Mae assert, for example, that "the McFaddens' fraud and other state claims require an analysis of whether Flagstar complied" with federal law. Appellees' Br. at 25. Yet this Court's recent McCauley opinion belies that assertion. Similarly, Flagstar Bank and Fannie Mae sweepingly claim that "[b]ecause the McFaddens allege that Flagstar fraudulently handled their loan modification, the alleged misrepresentation was made in connection with the servicing of a loan. Loan servicing falls within the express preemption provision of § 560.2(b)(10), thus the district court possessed subject matter jurisdiction . . . ." Appellees' Br. at 27. It clearly cannot be that any act occurring "in connection with" a loan is preempted by HOLA. And we recently

made plain in McCauley that any assertion to the contrary flies in the face of the law of this Circuit.

In sum, Defendants' generalized assertions and (mis)characterizations of the McFaddens' claims fail to demonstrate that those state-law claims necessarily depend on questions of federal law so disputed and so substantial that they warrant wresting the state-law complaint from the state court in which it was filed. Further, because Defendants fail to meet their burden as to complete preemption and substantial question jurisdiction, and because they failed to allege diversity jurisdiction based on fraudulent joinder in their notice of removal and the circumstances here do not warrant looking the other way, they should not have been allowed to remove this case to federal court. Accordingly, the district court and this Court should have remanded this matter back to state court—a more than adequate forum in which Defendants would be free to assert their preemption and other defenses. For these reasons, I respectfully dissent.

35